## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

THE FILTA GROUP, INC., a
Delaware corporation,

      Plaintiff,

v.                                                       Case No. _____

PATRICK MICHAEL GARRY, an
individual, and MMG ENTERPRISE,
LLC, an Oklahoma limited liability
company,

      Defendants.

_____/

## COMPLAINT; INJUNCTIVE RELIEF REQUESTED;
## DEMAND FOR JURY TRIAL

Plaintiff The Filta Group, Inc. (hereafter, "Plaintiff" or "Filta") hereby

files this Complaint against Defendants Patrick Michael Garry and MMG

Enterprise, LLC, and states as follows:

1.    This is an action for preliminary and permanent injunctive relief

and damages for trademark infringement, unfair competition, breach of

contract and to enforce related covenants not to compete.

2.    Plaintiff Filta is a Delaware corporation with its principal offices

at 7075 Kingspointe Parkway, Suite 1, Orlando FL 32819.  It franchises others

1

to operate Filta Environmental Kitchen Solutions® services throughout Florida, the United States, and internationally.

3.      Defendant MMG Enterprise, LLC ("MMG") is an Oklahoma limited liability company with its principal offices at 16117 Montague Drive, Edmond, OK 73013. MMG was previously Filta's franchisee. MMG conducts business under the trade name Grease Tech.

4.      Defendant Patrick Michael Garry ("Garry") is an individual who is or was the owner and president of MMG. Upon information and belief, Garry resides in and is domiciled in Oklahoma.

5.      Garry executed a franchise agreement between Filta and MMG ("Franchise Agreement") on April 4, 2016, which is attached hereto as Exhibit A. In connection with the Franchise Agreement executed by Garry on behalf of MMG, Garry executed on his individual behalf a personal guarantee ("Guarantee") for "each contribution and payment required of [MMG]," and agreed to be personally bound to "all covenants not to compete, confidentiality provisions, governing law and dispute resolution provisions…contained in the Agreement." Furthermore, Garry agreed that "[e]xcept as expressly authorized by the [Franchise] Agreement, [he] shall not make use of the any of the intellectual property rights licensed under the [Franchise] Agreement or the goodwill of Filta and its affiliates . . . ."

6.     On May 15, 2022 Filta, Garry, and MMG executed a Confidential Separation Agreement ("Separation Agreement"), which is attached hereto as Exhibit B. In connection with the Separation Agreement, Garry and MMG ("Defendants") agreed to abide by the Post-Termination Obligations contained in the Franchise Agreement, and Filta agreed to waive the early termination penalties required by the Franchise Agreement. Defendants also agreed to relinquish all right, title, and interest in the Territory (Filta Territory OK-02 and OK-03, as shown on the map attached to the Franchise Agreement as amended). Defendants further agreed that "all issues related to the interpretation and enforcement of this [Separation] Agreement are controlled exclusively by the application of Florida law[,]" and "[i]f Filta is required to pursue mediation, arbitration or litigation to enforce the terms of this Agreement, then [Defendants] will reimburse Filta for all attorneys' fees and legal costs in incurs in doing so."

7.     This Court has *in personam* jurisdiction as to Defendant Garry because he has waived "all questions of personal jurisdiction and venue," and agreed that Filta may file suit "in the federal or state court where Filta's principal office is located at the time the suit is filed."

8.     This Court has *in personam* jurisdiction as to Defendant MMG because it has waived "all questions of personal jurisdiction and venue," and

agreed that Filta may file suit "in the federal or state court where Filta's principal office is located at the time the suit is filed."

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338, because the claims herein arise under the provisions of the Lanham Act (15 U.S.C. §§ 1051 *et seq.*), and under 28 U.S.C. 1367 because the claims arise under substantially the same conduct and form part of the same case or controversy.

10.     Alternatively, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states, and as set forth in more detail below, the amount in controversy is in excess of $75,000, exclusive of interest and costs.

11.     Venue properly lies within this judicial district and division pursuant to 28 U.S.C. §1391 and by express consent of Defendants. Filta's principal office was located in Orlando at the time the Franchise and Separation Agreements were entered into and remains in Orlando today.

12.     Filta has retained the undersigned counsel and is obligated to pay reasonable and necessary attorneys' fees and costs in prosecuting this action.

## PLAINTIFF AND ITS TRADEMARKS

13.     Plaintiff Filta is the owner of a proprietary system providing on-site services to restaurants, catering establishments, and institutional kitchens. The services include Filta Environmental Kitchen Solutions® for

4

kitchen cleaning services and cooking oil and fat filtration and cleaning services, FiltaFry® fryer maintenance services (microfiltration of cooking oil, fryer cleaning, temperature calibration, and advice on good frying practices), FiltaBio® collection and sale or waste cooking oil, FiltaCool® services for refrigeration units and walk-in coolers, FiltaGold® new cooking oil delivery services, and FiltaDrain® services for drain management (the "FILTA Services").

14.    Filta has entered franchise agreements with companies across the U.S. and internationally to market and offer products and services under its various FILTA brands (the "FILTA Marks"), resulting in more than 125 franchise locations across 44 states, including Oklahoma. Filta has a contractual obligation to its franchisees to ensure that they can fully exploit the territories granted to them.

15.    Filta's registered U.S. trademarks include U.S. Registration No. 3,701,153 for FILTA ENVIRONMENTAL KITCHEN SOLUTIONS, U.S. Registration No. 5,063,763 for FILTAGOLD, U.S. Registration No. 4,056,208 for FILTABIO, U.S. Registration No. 3,730,770 for FILTACOOL, U.S. Registration No.  3,711,461 for FILTAFRY, and U.S. Registration No. 5,335,043 for FILTADRAIN. And Filta has pending applications for FILTASTEAM, U.S. Application No. 97,429,616, FILTACLEAN, U.S.

Application No. 98,045,153, and FILTACLEAN, U.S. Application No. 98,045,156.

16. Filta operates in a specialized niche industry, and spends significant time, money, and resources searching for and developing both the technology supporting the FILTA Services under the FILTA Marks, as well as relationships with customers, suppliers, and franchisees.

17. Valuable confidential and proprietary information developed by Filta is provided to its franchisees under strict confidentiality obligations, including information about:

    a. Filta's products and services, customers, suppliers, accounts, finances, and other dealings, transactions, and affairs;

    b. Filta's relationships with its franchisees and former franchisees and their respective principals, owners, and prospective investors;

    c. Filta's relationships with its shareholders and employees and former shareholders and employees;

    d. Filta's technical information, drawings, engineering data, equipment and performance specifications, quality control information, equipment cost, and price information; and

    e. Filta's marketing plans, advertising plans, business plans, territorial development strategies, and training curricula.

18.     Filta takes reasonable steps to maintain the secrecy of its confidential information because of the commercial value of such information to Filta and its franchisees.

19.     This confidential information is vital to maintaining Filta's competitive position in the industry, protecting the investments of Filta's franchisees and shareholders, and reflecting the significant investment Filta has made in its technology and data. Filta considers this information to be proprietary and trade secret, and all franchisees are required to agree to non-disclosure terms prior to receiving such confidential information.

## NON-COMPETITION AND CONFIDENTIALITY OBLIGATIONS OF GARRY AND MMG

20.     The Separation Agreement among Filta, Garry, and MMG was made effective as of May 15, 2022.

21.     In the Separation Agreement, Defendants agreed to abide by the Post-Expiration Obligations of the Franchise Agreement. These obligations include, but are not limited to: returning certain equipment to Filta; de-identifying vehicles and the business; ceasing to trade under the FILTA Marks; ceasing to use the FILTA Marks (or any imitation or approximation thereof) on the vans, stationery, signs, uniforms, or otherwise; not holding themselves out as an operator of a Filta franchise or as having any connection with Filta or the System; and complying with ongoing obligations related to Confidential

Information, Restrictions on Competition (as defined in Section 23 of the Franchise Agreement), indemnification (as defined in Section 24 of the Franchise Agreement), and Disputes (as defined in Section 30 of the Franchise Agreement).

22.     In the Separation Agreement, Defendants agreed to abide by certain confidentiality obligations, including but not limited to: "For a period of five years from the Effective Date, neither Filta, on the one hand, nor You on the other, shall disclose Confidential Information (as defined below) to any person or entity who is not a party to this Agreement, or use Confidential Information other than as contemplated by this Agreement." The Separation Agreement further defines Confidential Information as meaning "(i) the terms of this [Separation] Agreement; and (ii) any information regarding the other's business which Filta, on the one hand, and [Defendants] on the other, have obtained or learned by virtue of the negotiation, preparation, or performance of the [Separation] Agreement or the Franchise Agreement, attendance at Filta's Discovery Day, attendance at Filta's training program[,] and performance of Filta's sales support obligations, or any other business contacts between the parties."

23.     The Franchise Agreement between Filta and MMG was finalized on or about April 4, 2016. The term of the Franchise Agreement was ten years.

24.    Section 1 of the Franchise Agreement expressly defines Filta's

"Confidential Information" as follows:

> any information not known to the public concerning You, Filta or
> the System (whether written, oral, visual, electronic, or in any
> other form or media), including but not limited to information
> concerning: (a) Filta's products and services, customers, suppliers,
> accounts, finances, or other dealings, transactions or affairs; (b)
> Filta's relationships with its franchisees and former franchisees
> and their respective principals, owners, and prospective investors;
> (c) Filta's relationships with its shareholders and employees and
> former shareholders and employees; (d) technical information,
> drawings, engineering data, equipment and performance
> specifications, quality control information, equipment cost and
> price information; (e) marketing plans, advertising plans, business
> plans, territorial development strategies, and training curricula;
> (f) other information of a similar nature which You obtain as a
> result of Your association with Filta; and (g) any and all works of
> authorship and material that You prepare based on Confidential
> Information, whether prepared individually, collectively or jointly
> with Filta or a third party.

25.    Section 17.1 of the Franchise Agreement states in part:

> You may not, during the term of this Agreement and for a period
> of five years after expiration, termination, non-renewal, or transfer
> of this Agreement, communicate or divulge Confidential
> Information to any unauthorized person or use Confidential
> Information for your own benefit or for the benefit of any other
> person in any manner other than in connection with the
> Franchise…

26.    Section 23.1 of the Franchise Agreement states, "During the term

of this Agreement, You may not, without Filta's prior written consent, own,

operate, be employed by, provide financing or other assistance or facilities to,

or have any interest in, any business that offers services similar to those provided by the Franchise (a 'Competing Business').'"

27.    Section 23.2 of the Franchise Agreement states:

For 2 years following the expiration, termination or non-renewal of this Agreement or the approved transfer of this Agreement by You to a new franchisee, You may not, without Filta's prior written consent, own, operate, be employed by, provide financing or other assistance or facilities to, or have any interest in, any Competing Business that is operating within any Territory formerly assigned to You or within the geographic area defined by an outer boundary line that is measured twenty-five miles outward from the perimeter of any Territory formerly assigned to You. You agree that this restriction will not keep You from earning a livelihood, and You acknowledge that its purpose is to protect the goodwill of Filta and its other franchisees.

28.    Section 23.3 of the Franchise Agreement states:

For 2 years following the expiration, termination, or non-renewal of this Agreement or the approved transfer of this Agreement by You to a new franchisee, You may not have any contact with any customers to which You provided services within the 1-year period before expiration, termination, non-renewal, or transfer for the purpose of soliciting such customers for any Competing Business at any location.

29.    Section 23.4 of the Franchise Agreement states:

The running of the time periods in clause 23.2 and 23.3 will be suspended during any period in which You are not in compliance with those sections. In addition, if a court proceeding results in enforcement of clause 23.2 or 23.3, any portion of the time periods in those sections that has not yet run will run from the date of the court order or settlement permitting enforcement.

30.    Garry executed the Franchise Agreement as "owner" of MMG.

31. The Franchise Agreement included a personal guarantee executed by Garry. By the terms of the Guarantee, Garry acknowledged he was "bound personally by all covenants not to compete, confidentiality provisions, governing law and dispute resolution provisions, and restrictions on transfer of interest contained in the [Franchise] Agreement."

32. By virtue of his position in MMG, Garry was provided Filta's confidential information and training. Indeed, Garry learned Filta's business from the inception of the MMG franchise. He was thus provided the knowledge, based on Filta's confidential information, to engage in a business that could compete directly against Filta.

33. Through Garry, MMG was also provided Filta's confidential information and training. Indeed, MMG learned Filta's business from the inception of the MMG franchise. It was thus provided the knowledge, based on Filta's confidential information, to engage in a business that could compete directly against Filta.

34. MMG and Garry (because of his position with MMG) had ongoing access to specialized training, marketing, education, and professional support from Filta.

## THE DEFENDANTS' BAD ACTS

35. In April 2022, Garry told Filta he wished to terminate MMG's Franchise Agreement.

36.     Shortly thereafter, Filta, MMG, and Garry entered into the Separation Agreement.

37.     On or around August 3, 2023, Filta learned that MMG had begun using the trade name Grease Tech and was continuing to perform fryer cleaning and oil disposal services in and around Oklahoma City, Oklahoma that are virtually identical to the FILTA Services.

38.     Upon information and belief, Defendants began contacting customers of Filta franchisees on behalf of Grease Tech/MMG.

39.     Under the Separation Agreement, Defendants were to de-identify any vehicles used as a franchisee. Upon information and belief, Defendants have been operating a van in or around Oklahoma City, Oklahoma prominently displaying at least one of the FILTA Marks and the website www.gofilta.com.

40.     Under the Separation Agreement, Defendants were to dismantle their waste oil collection facility. On information and belief, they have not dismantled their waste oil collection facility, and they continue to collect and sell waste oil in or around Oklahoma City, Oklahoma.

41.     Under the Separation Agreement, Defendants were to inform their Filta customers that they were no longer a Filta franchisee and were not to hold themselves out as being associated with Filta or the FILTA System. On

information and belief, Defendants never notified their former customers that they were no longer a Filta franchisee.

42.    Defendants are aware of the goodwill, reputation, and value represented and symbolized by the FILTA Marks.

43.    Defendants' conduct alleged hereunder was and is knowing, willful, and intentional, which makes this case an exceptional case.

44.    On information and belief, Defendants had and have a bad faith intent to profit from the FILTA Marks.

45.    Defendants' use of the FILTA Marks trades on the Filta's goodwill, injures Filta, its goodwill, and the FILTA Marks, and is likely to cause a reduction the distinctiveness of the FILTA Marks, tarnish the goodwill associated with the FILTA Marks, and is otherwise dilutive of the FILTA Marks.

46.    Defendants have caused, and unless enjoined by the Court, will continue to cause irreparable damage, loss, and injury to Filta, for which Filta has no adequate remedy at law.

47.    Filta is entitled to preliminary and permanent injunctive relief against Defendants' use of the FILTA Marks or any mark or name confusingly similar to the FILTA Marks.

48.    Defendants' wrongful conduct has caused and continues to cause Filta substantial harm, including, without limitation, lost profits, damage to

Filta's goodwill and reputation, the costs of this action, and reasonable attorneys' fees.

49.    All conditions precedent to the filing of this action have occurred or been waived or excused by law.

50.    Plaintiff was required to and did retain an attorney to enforce its rights described herein and has incurred attorneys' fees as a result thereof.

<u>**COUNT I:**</u>
<u>**BREACH OF AGREEMENT AGAINST GARRY AND MMG**</u>

51.    Count I is a claim against Garry and MMG for breach of the Separation Agreement, including but not limited to breaching paragraphs 2 (Post-Expiration Obligations) and 4 (Confidentiality) of the Separation Agreement.

52.    Plaintiff incorporates and realleges the allegations of paragraphs 1 through 50 above as if fully set forth herein.

53.    As a condition of the Separation Agreement, Garry and MMG agreed to be bound by the Post Termination Obligations of the Franchise Agreement. These obligations included, but were not limited to, de-identifying the vehicles and business, ceasing to use the FILTA Marks, and complying with the Restrictions on Competition in Paragraph 23 of the Franchise Agreement.

54.    During the term of the Agreement, there were no geographic restrictions on the non-compete obligation because Filta franchisees are located throughout the U.S. and internationally.

55.    The parties expressly agreed that the restrictions on competition agreed to by Garry and MMG's existed without geographic restriction during the term of the Agreement, and that thereafter, they would continue for two years, within twenty-five miles of the Territory described in the Agreement.

56.    In particular, Garry and MMG agreed that "[f]or 2 years following the expiration, termination or non-renewal of this Agreement . . . , You may not, without Filta's prior written consent, own, operate, be employed by, provide financing or other assistance or facilities to, or have any interest in, any Competing Business that is operating within any Territory formerly assigned to You or within the geographic area defined by an outer boundary line that is measured twenty-five miles outward from the perimeter of any Territory formerly assigned to You.")."

57.    Under § 542.335, Fla. Stat., this Court is required to construe the restrictive covenant agreed to by Garry and MMG "in favor of providing reasonable protection to all legitimate business interests" established by Filta.

58.    On information and belief, Garry and MMG solicited both current and potential customers of Filta franchisees to provide services that are substantively equivalent to the FILTA Services in or around Oklahoma City,

Oklahoma and elsewhere, including but not limited to within twenty-five miles of the Territory described in the Agreement.

59.    The loss of a single franchise opportunity by Filta represents a loss to Filta of more than $100,000.

60.    Garry's ownership of and employment at MMG operating as Grease Tech is in direct competition with Filta, and harms Filta's business interests. By competing directly with Filta in contravention of their contractual obligations, Defendants have caused and continue to cause Filta and its rightful franchisees to suffer further lost business, revenue, and profit.

61.    Filta has advised Garry and MMG that it intends to enforce Garry and MMG's obligations under the Separation Agreement.

62.    Because there is an enforceable covenant not to compete in favor of Filta, Filta is entitled to enforce it in accordance with § 542.335, Fla. Stat.

63.    Filta has and asserts against Garry and MMG at least the following enforceable and legitimate business interests:

a.    Substantial relationships with specific prospective or existing customers, vendors and suppliers, in accordance with § 542.335 (1) (b) 3, Fla. Stat.;

b.    Customer goodwill associated with the FILTA Services, that is, a specific marketing and trade area, in accordance with § 532.335 (1) (b) 4 a, b, and c, Fla. Stat.;

16

    c.    Trade secrets and other commercially sensitive information, including customer/vendor/supplier lists, information concerning the identity of Filta's clients and prospective clients, business plans of Filta, and technical information, drawings, engineering data, equipment and performance specifications, quality control information, equipment cost and price information of Filta, as provided in § 542.335 (1) (b) 2, Fla. Stat; and

    d.    Specialized training provided by Filta in accordance with the Franchise Agreement, as provided in § 542.335 (1)(b)5.

64.    The covenant not to compete in the Separation Agreement is reasonably necessary to protect Filta's above-identified legitimate business interests, and these interests cannot adequately be protected without an Order from this Court. Garry and MMG have and will solicit customers of Filta's franchisees and compete in violation of the non-compete obligation unless this Court enjoins their conduct from continuing.

65.    The terms of the Separation Agreement are reasonable and fall within the limits set by §542.335, Fla. Stat.

66.    In accordance with § 542.335 (1) (j), Fla. Stat., the violation of an enforceable restrictive covenant creates a presumption of irreparable injury.

17

67.    Independent of this presumption, Filta is suffering and will continue to suffer irreparable injury from Garry and MMG's continued violation of the restrictive covenant.

68.    Filta has no adequate remedy at law in the present circumstances.

69.    Filta has a substantial probability of success on the merits of the claim asserted herein, which is attended by an intentional effort to unlawfully destroy Filta's business through a pattern and practice of unfair competition.

70.    The public interest is served by enforcing the restrictive covenant by temporary and permanent injunction forthwith. There is no public interest in permitting the conduct in which Garry and MMG are presently engaged.

## COUNT II:
## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
## UNDER § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

71.    Count II is a claim against Garry and MMG for trademark infringement under 15 U.S.C. § 1125(a).

72.    Plaintiff incorporates and realleges the allegations of paragraphs 1 through 50 above as if fully set forth herein.

73.    Filta adopted and continuously used the FILTA Marks to promote the FILTA Services since at least 2002.

74.    Neither Garry nor MMG has rights in and to the FILTA Marks or any mark confusingly similar thereto.

75.     Garry and MMG have used and continue to use the FILTA Marks to compete directly with Filta and Filta's franchisees, such that consumers have been and are likely to be confused as to the source of the goods and services offered by Defendants.

76.     Defendants' acts as described herein are likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Garry and/or MMG with Filta, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities.

77.     Upon information and belief, Defendants' acts as described herein have caused actual confusion or mistake as to the origin, sponsorship, or approval of their goods, services, or commercial activities.

78.     Defendants advertise their services through the same media outlets as Filta and Filta's franchisees, and consumers are likely to encounter Filta and Filta's franschisees' and Defendants' advertisements in the same places.

79.     Defendants are taking advantage of the goodwill created by Filta's use of the FILTA Marks for the FILTA Services. Defendants' actions are intended to cause consumers to believe that they are, or are authorized by, Filta. In other words, Defendants intend to confuse consumers as to who is the provider of the FILTA Services that Filta and its franchisees have provided since at least 2002.

80.    Plaintiff is entitled to preliminary and permanent injunctive relief against Defendants' use of the FILTA Marks.

81.    Plaintiff is entitled to a presumption of irreparable harm pursuant to 15 U.S.C. § 1116(a) in connection with the injunctive relief sought herein.

82.    Defendants' infringement of the FILTA Marks will irreparably harm Plaintiff and the FILTA Marks, and will tarnish the goodwill associated with the FILTA Marks, and is dilutive of the FILTA Marks. Defendants' actions, unless enjoined by this Court, will continue to cause irreparable damage, loss, and injury to Plaintiff and the FILTA Marks for which Plaintiff has no adequate remedy at law.

83.    Pursuant to 15 U.S.C. § 1117(a), Plaintiff is entitled to recover (1) Defendants' profits, (2) any damages sustained by Plaintiff, and (3) the costs of this action, including all profits Defendants have derived from, and damages Plaintiff suffered from, Defendants' use of the FILTA Marks, including for sales of any products or services in connection therewith.

84.    By reason of Defendants' bad faith, and knowing, intentional, and willful infringement, Filta has sustained irreparable harm for which there is no adequate remedy at law, as well as damages in an amount to be determined at trial.

## COUNT III:
## INFRINGEMENT OF REGISTERED TRADEMARKS UNDER THE LANHAM ACT (15 U.S.C. § 1114)

85.    Count III is a claim against Garry and MMG for trademark infringement under 15 U.S.C. § 1114.

86.    Plaintiff incorporates and realleges the allegations of paragraphs 1 through 50 above as if fully set forth herein.

87.    Plaintiff has been using the FILTA Marks in commerce for many years in connection with the FILTA Services and owns the trademark rights therein. Plaintiff's FILTA Marks are distinctive.

88.    Plaintiff owns U.S. trademark registrations for several of its FILTA Marks, as specified in Paragraph 15 above. Each of these registrations has achieved incontestable status.

89.    Plaintiff's FILTA Marks and the trademark rights associated therewith are valid and enforceable.

90.    Defendants are aware of the enormous goodwill, reputation, and value represented and symbolized by the FILTA Marks, and are fully aware that the FILTA Marks are widely recognized and relied upon by the public to identify the services and products of Plaintiff and its licensees, and to distinguish them from the services and products of others.

91.    With knowledge of the goodwill, reputation, and value represented and symbolized by the FILTA Marks, and without the consent of Plaintiff,

Defendants have used, and continue to use, the FILTA Marks in commerce to sell, *inter alia*, fryer cleaning and oil disposal services in a manner that creates a likelihood of confusion and is likely to cause confusion as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' products, services, or commercial activities.

92.    Plaintiff's first use of and trademark rights in its FILTA Marks pre-date and are senior to Defendants' infringing use of the FILTA Marks.

93.    Defendants' unlawful activities reflect adversely on Plaintiff because Plaintiff has no ability to control the quality of Defendants' products or services.

94.    On information and belief, Defendants' acts are being committed with the purpose and intent of misappropriating and trading upon the goodwill and reputation association with Plaintiff and its FILTA Marks.

95.    Defendants' actions constitute infringement of Plaintiff's registered trademarks in violation of 15 U.S.C. § 1114.

96.    Defendants' infringement of the FILTA Marks will irreparably harm Plaintiff and its trademarks, including because of the resulting confusion among consumers and because it is likely to cause a reduction in the distinctiveness of Plaintiff's trademark, will tarnish the goodwill associated with Plaintiff's trademark, and is dilutive of the FILTA Marks. Defendants'

actions, unless enjoined by this Court, will continue to cause irreparable damage, loss, and injury to Plaintiff and its trademarks for which Plaintiff has no adequate remedy at law.

97.     Plaintiff is entitled to preliminary and permanent injunctive relief against Defendants' use of the FILTA Marks.

98.     Plaintiff is entitled to a presumption of irreparable harm pursuant to 15 U.S.C. § 1116(a) in connection with the injunctive relief sought herein.

99.     Defendants' actions have caused Plaintiff to sustain monetary losses, and other damage and injury, in an amount to be determined at the time of trial.

100.     Pursuant to 15 U.S.C. § 1117(a), Plaintiff is entitled to recover (1) Defendants' profits, (2) any damages sustained by Plaintiff, and (3) the costs of this action, including all profits Defendants have derived from, and damages Plaintiff suffered from, Defendants' use of the FILTA Marks, including for sales of any products or services in connection therewith.

101.     On information and belief Defendants' actions were done knowingly and in bad faith so as to justify judgment against Defendants in an amount equal to three times Defendants' profits and Plaintiff's damages, plus reasonable attorneys' fees.

102.    Defendants' conduct was willful and intentional, which makes this case an exceptional case, entitling Plaintiff to an award of attorneys' fees and costs under the Lanham Act.

103.    Plaintiff is entitled to a full accounting in respect to all gains, profits, and advantages derived by Defendants through their use of the FILTA Marks.

104.    Plaintiff is entitled to an order which requires Defendants to place corrective advertising in each advertising venue where Defendants have used the FILTA Marks.

WHEREFOR, Plaintiff hereby demands judgment against Defendants Garry and MMG for the following relief:

A.    A temporary and thereafter permanent injunction against Garry and MMG enforcing the restrictive covenant in the Separation Agreement;

B.    An award of reasonable attorneys' fees against Garry and MMG;

C.    Compensatory damages including but not limited to the loss of profits attributable to Defendants' breaches of the Separation Agreement;

D.    A temporary and thereafter permanent injunction against Garry and MMG:

i.    Providing, advertising, or promoting any of the FILTA Services or related services, using any of the FILTA Marks or any simulation, reproduction, copy or colorable imitation of the FILTA Marks;

ii.   Using any false designation of origin, or performing any act which can, or is likely to lead, members of the trade or public to believe that any services provided by Defendants are in any way associated or connected with Filta or any Filta franchisee, or are sold, licensed, sponsored, approved, or authorized by Filta;

iii.  Using any social media account or internet domain name which colorably simulates the FILTA Marks, and which can or is likely to lead members of the trade or public to believe that any services provided, or products distributed or sold by Defendants are in any way associated or connected with Filta, or are sold, licensed, sponsored, approved, or authorized by Filta;

iv.   Engaging in any activity constituting unfair competition with Filta or Filta's franchisees, or with Filta's rights in, to use, or to exploit the FILTA Marks, or causing injury to Filta's name, reputation, or goodwill;

25

v.  Filing, pursuing, or obtaining any trademark or name using the word "filta," or any name confusingly similar thereto; and

vi.  Assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (i)-(v) above.

E.  Directing that Defendants deliver up for destruction all signs, prints, products, labels, advertisements, promotional material, clothing, catalogues, brochures, information sheets, website materials, or other print or electronic material of any type in their possession or control bearing any of the FILTA Marks, or any of the matter enjoined under Paragraph D hereof;

F.  Directing Defendants to dismantle their waste oil facility;

G.  To be jointly and severally liable for monetary damages sustained by Filta as a result of Defendants' unlawful conduct, and all profits realized, in an amount to be proved at trial and to be trebled or enhanced as allowed by law because of Defendants' activities described herein;

H.  A determination that this is an exceptional case, and therefore awarding Plaintiff its reasonable attorneys' fees under 35 U.S.C. § 1117(a).

I.    Directing that the aforesaid amount be multiplied or otherwise enhanced as permitted by law.

J.    Additional damages permitted by leave of Court; and

K.    Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED this January 25, 2024.

*s/ Ava K. Doppelt*
Ava K. Doppelt
Florida Bar No.: 393738
adoppelt@allendyer.com
Trevor F. Ward
Florida Bar No.: 1031171
tward@allendyer.com
**ALLEN, DYER, DOPPELT**
**& GILCHRIST, P.A.**
255 S. Orange Avenue, Suite 1401
Orlando, Florida 32801
Telephone: (407) 841-2330
Facsimile: (407) 841-2343

*Attorneys for Plaintiff*

# Exhibit A





========================

# FRANCHISE AGREEMENT

========================

DATED: April 4, 2016

between

**THE FILTA GROUP INC.,**

**a Delaware corporation**

**and**

**MMG ENTERPRISE, LLC**

April 2015

## TABLE OF CONTENTS

**Page**

1    DEFINITIONS...............................................................................1

2    FRANCHISE RIGHTS AND TERM ....................................................5

3    CONDITIONS OF RENEWAL .........................................................6

4    FEES...................................................................................7

5    PRE-OPENING OBLIGATIONS .......................................................8

6    TRAINING..............................................................................9

7    FILTA'S SALES SUPPORT OBLIGATIONS.........................................10

8    FRANCHISEE'S OPERATING OBLIGATIONS .....................................10

9    NATIONAL ACCOUNT CONTRACTS AND CENTRALIZED ACCOUNTS ...................18

10    TELEPHONE NUMBERS ...........................................................19

11    REPORTS AND RECORDS .........................................................20

12    INSURANCE .........................................................................21

13    STAFFING ...........................................................................21

14    ADVERTISING/PROMOTIONS .....................................................22

15    TRADEMARKS .......................................................................22

16    IMPROVEMENTS AND NEW SERVICES.........................................23

17    CONFIDENTIAL INFORMATION ...................................................23

18    FILTA'S RIGHT TO COMMUNICATE WITH CUSTOMERS ...................24

19    ASSIGNMENT BY FILTA ...........................................................24

20    TRANSFER ...........................................................................24

21    TERMINATION.......................................................................28

22    OBLIGATIONS UPON EXPIRATION OR TERMINATION....................30

23    RESTRICTIONS ON COMPETITION ...............................................31

i

**24    INDEMNITY** ................................................................................................**32**

**25    ACKNOWLEDGMENTS** ...........................................................................**32**

**26    RESERVATION OF RIGHTS** ....................................................................**33**

**27    NO AGENCY** .........................................................................................**33**

**28    NO IMPLIED WAIVERS** ..........................................................................**33**

**29    SURVIVAL** .............................................................................................**33**

**30    DISPUTES** ............................................................................................**33**

**31    MODIFICATION OF AGREEMENT** ..........................................................**34**

**32    ENTIRE AGREEMENT** ...........................................................................**34**

**33    NOTICE** ................................................................................................**34**

**34    EXPENSES** ...........................................................................................**35**

**ATTACHMENTS:**

**Schedule**

**Personal Guarantee**

**Exhibit 1 - Conditional Assignment of Telephone Numbers**

**Exhibit 2 - Termination Fee**

**Exhibit 3 – FiltaBio Addendum**

# FILTA FRANCHISE AGREEMENT

**PARTIES:**

(1)    **THE FILTA GROUP INC.,** a Delaware corporation whose principal place of business is at 7075 Kingspointe Parkway, Suite 1, Orlando, Florida 32819 (**"we"** or **"Filta"**); and

(2)    **MMG ENTERPRISE, LLC**, a limited liability corporation, whose address is 16117 Montague Drive, Edmond, OK 73013 (**"You"**).

**RECITALS:**

A.    Filta is in the business of franchising others to operate Filta Environmental Kitchen Solutions® businesses, which provide certain services to restaurants, catering establishments, and institutional kitchens. The services currently include the **"FiltaFry Service"** (on-site microfiltration of cooking oil using a proprietary filtration machine, fryer cleaning, temperature calibration, and advice on good frying practices), the **"FiltaBio Service"** (collection, storage and sale of waste cooking oil), and the **"FiltaCool Service"** (placement of special filters in walk-in coolers, freezers and other refrigeration units to absorb and desorb moisture, reduce odors, capture ethylene and pectin gases, and stabilize cold storage temperatures).

B.    We have developed and own a distinctive set of specifications and operating procedures (collectively, the **"System"**) for Filta Environmental Kitchen Solutions® businesses. The distinguishing characteristics of the System include, but are not limited to, the proprietary FiltaFry Mobile Filtration Unit (**"MFU"**) and filters for microfiltration of cooking oils; the proprietary FiltaCool walk-in cooler and refrigeration unit filters; specially equipped vans to transport the MFU and Filta products to customer sites; specifications for additional equipment and accessories; and the accumulated experience reflected in Filta's training program, operating procedures, customer service standards, and marketing techniques; all of which Filta may change, improve and further develop from time to time.

C.    Filta identifies the businesses operating under the System by means of the FILTA ENVIRONMENTAL KITCHEN SOLUTIONS® logo shown on the cover page to this Agreement, and such other trademarks, service marks, trade names, signs, logos and other indicia of origin as Filta may designate from time to time for use with the System (collectively, the **"Proprietary Marks"**).

D.    You understand the importance of Filta's high standards of quality, cleanliness, appearance and service; of opening and operating Filta businesses in accordance with the Franchise Agreement and Filta's standards, specifications and procedures; and of monitoring Your performance in the Territory.

**IT IS AGREED** as follows:

# 1    DEFINITIONS

In this Agreement, unless the context otherwise requires:-

**"Advertising/Promotions Levy"** means $-0- for each of the first 3 Months following the Opening Date; and (ii) $135 per month, starting in the 4th Month after the Opening Date. Filta has the right to adjust the Advertising/Promotions Levy once per calendar year, on or before December 31, by the amount of the Annual Adjustment.

**"Annual Adjustment"** means an increase in the amount of the monthly Service Fee and Advertising/Promotions Levy, respectively, equal to the greater of: (i) the increase in the U.S. Consumer Price Index - All Urban Consumers for the calendar year; or (ii) 2.5% of the then-current monthly amounts of the Service Fee and Advertising/Promotions Levy.

**"Business Volume"** means the aggregate value per week, measured at any particular point in time, of the customer accounts You service (including, if applicable, National Account Contracts under Article 9). For purposes of this clause, each customer account will be valued on the assumption that the customer will continue service at the same level (frequency and scope of work) as most recently ordered.

**"Centralized Account"** means a customer that does not have a National Account Contract but (i) owns, operates, controls, or represents multiple locations at which Environmental Kitchen Solutions Services may be performed, and (ii) requests centralized billing of such services through Filta.

**"Company"** means a corporation or limited liability company that You form to own the Franchise.

**"Confidential Information"** means any information not known to the public concerning You, Filta or the System (whether written, oral, visual, electronic, or in any other form or media), including but not limited to information concerning: (a) Filta's products and services, customers, suppliers, accounts, finances, or other dealings, transactions or affairs; (b) Filta's relationships with its franchisees and former franchisees and their respective principals, owners, and prospective investors; (c) Filta's relationships with its shareholders and employees and former shareholders and employees; (d) technical information, drawings, engineering data, equipment and performance

1

specifications, quality control information, equipment cost and price information; (e) marketing plans, advertising plans, business plans, territorial development strategies, and training curricula; (f) other information of a similar nature which You obtain as a result of Your association with Filta; and (g) any and all works of authorship and material that You prepare based on Confidential Information, whether prepared individually, collectively or jointly with Filta or a third party.

**"Environmental Kitchen Solutions Services"**   means, collectively, the FiltaFry Service, the FiltaBio Service, and the FiltaCool Service, as those terms are further defined in Recital A, and as those services may be modified or supplemented by Filta under clause 16.2 of this Agreement.

**"Equipment"**   means those items contained in the Equipment Package and any other similar items purchased or leased by You for the Franchise.

**"Equipment Package"**   means, collectively, the items of equipment set out in the Schedule.

**"FDD"**   means the Franchise Disclosure Document then used by Filta to offer franchises in the U.S.A. (or the Franchise Disclosure Document most recently used, if Filta is not then granting new franchises in the U.S.A.).

**"Fee Payment Date"**   means the 28th of each Month (or the next business day, if the 28th falls on a weekend or federal holiday).

**"Filter Payment Date"**   means the 7th of each month (or the next business day, if the 7th falls on a weekend or federal holiday).

**"Franchise"**   means the Filta Environmental Kitchen Solutions business that You operate in accordance with the provisions of this Agreement, including its attachments.

**"Franchise Portal"**   means one or more password-protected sites designated by Filta for use by franchisees and having such features and terms of use as Filta may determine from time to time.

**"Gross Monthly Revenue"**   means the gross revenue arising directly or indirectly from the conduct of the Franchise during each Month that this Agreement is in force (and for any period less than a complete Month). Gross revenue includes the value of all services

2

performed and of all goods sold and delivered by You during each Month, and the assumed gross revenue of the Franchise in each Month calculated for the purposes of any loss of profits or business interruption insurance claim.

**"Information Systems"** means, collectively, the Franchise Portal, Quickbooks (as defined below), a broadband internet connection, and a web connection between Your computer system and that of Filta for the transmission of invoices, monthly reporting and other information required under this Agreement.

**"Manual"** means the operations manual containing Filta's mandatory and recommended specifications and procedures for operation of a Filta business, as amended by Filta from time to time.

**"MFU"** means the proprietary mobile filtration machine used in the FiltaFry Service.

**"MFU Filters"** means the filters specifically designed and manufactured for use in the MFU.

**"Month"** means a calendar month.

**"National Account Contract"** means an arrangement between Filta and a customer for delivery of one or more Environmental Kitchen Solutions Services at multiple locations of the customer or its brand. Filta has sole discretion as to whether to pursue a National Account Contract with a particular customer, the manner of negotiation of the National Account Contract, and the terms and conditions of the National Account Contract.

**"Opening Date"** means the date scheduled by Filta for the arrival of the business development manager(s) in the Territory to begin the Sales Support Period pursuant to clause 7.1.

**"Opening Package"** means the Equipment Package, uniforms, marketing materials, vehicle preparation, Stock and Stationery listed in the Schedule.

**"Owners"** means all of Your shareholders, partners, or members, if You are a corporation, partnership, or limited liability company. This includes all persons whom Filta may subsequently approve to acquire an interest in You.

3

**"Premises"**                  means Your business office at the location specified in the
                                Schedule or another location approved by Filta pursuant to
                                clause 2.1.

**"Quickbooks"**                means the version of Intuit's "Quickbooks" small business
                                financial software program designated by Filta from time to
                                time.

**"Schedule"**                  means the Schedule attached to this Agreement. The Schedule
                                is an integral part of this Agreement and references to "this
                                Agreement" include the Schedule.

**"Service Fee"**               means (i) $-0- for the first 3 Months following the Opening
                                Date; and (ii) $565 per Month times the number of MFUs that
                                You have in operation, the number of Vans that You have in
                                operation, or the number of Territories in which You operate,
                                whichever is the greatest number of the three, beginning the
                                4th Month after the Opening Date. Filta has the right to adjust
                                the Service Fee once per calendar year, on or before December
                                31, by the amount of the Annual Adjustment.

**"Stationery"**                means business cards, stationery and other materials in which
                                You identify the Franchise and that bear any of the Proprietary
                                Marks.

**"Stock"**                     means the initial supply of MFU Filters, FiltaCool filters, and
                                other items set out in the Schedule.

**"Supply Payment Date"**       means the 7th of each Month (or the next business day, if the
                                7th falls on a weekend or federal holiday).

**"Territory"**                 means the geographic area specified in the Schedule.

**"Van"**                       means a vehicle meeting Filta's specifications that You use to
                                transport the MFU and to provide Environmental Kitchen
                                Solutions Services at customer locations.

## 2    FRANCHISE RIGHTS AND TERM

2.1    Filta grants You the right, and You undertake the obligation:

    2.1.1   to operate the Franchise within the Territory only;

    2.1.2   to use the Proprietary Marks and System solely in connection with the operation of the Franchise; and

    2.1.3   to provide services solely from the Vans and the Premises or such other premises as may be approved in writing by Filta.

2.2    While this Agreement is in effect, and except as otherwise provided in clause 8.2 and Article 9, Filta will not operate or license any person other than You to operate a business offering Environmental Kitchen Solutions Services under the Proprietary Marks or any other names or marks from premises or a Van within the Territory. Except as specifically provided in the previous sentence, Filta and its affiliates may engage in any business activities, under any name, in any geographic area and at any location, including within the Territory via the Internet, mobile networks, or any other electronic means.

2.3    **You are prohibited from conducting any business of the Franchise outside of your defined Territory by any means without Filta's express written consent as provided in clause 2.4.** If You engage in any unauthorized activities (including but not limited to providing services to customers, advertising for business, making sales calls, or performing demonstrations) outside of the Territory: (i) You agree to pay over to the franchisee in whose territory the activity occurs (or to Filta, if the territory is not franchised) any and all gross revenue derived from the unauthorized activity; and (ii) Filta will have the right to terminate this Agreement by written notice, effective immediately. If Filta grants a franchise for a territory in which You have engaged in unauthorized activities, and if Filta makes concessions to the franchisee because of Your unauthorized activities, You agree to pay Filta such amount as will make Filta whole for the concessions granted. The remedies specified in this clause are in addition to any other remedies that Filta and other franchisees may have as a result of your breach.

2.4    Notwithstanding clause 2.3, You may provide services to a customer in territory adjacent to Your defined Territory (**"Adjacent Territory"**) if, and only if, all of the following conditions are met: (1) You have been servicing the customer in the Territory for at least 8 weeks; (2) You are expressly requested by the customer or its affiliate to service one or more facilities of the same brand in the Adjacent Territory; (3) the Adjacent Territory has not been franchised to any other party by Filta; and (4) You provide Filta with a copy of the customer's request and obtain Filta's express written approval before providing service. If Filta authorizes You to service one or more customer locations outside of Your defined Territory, and Filta subsequently grants a franchise for a territory that covers the authorized customer location(s), Filta will give You notice and You will have eight (8) weeks from the date of the notice to transfer the servicing of the customer location(s) to the new franchisee.

You acknowledge that You will not be entitled to any compensation if this happens and You agree to assist the incoming franchisee with the transition in a professional manner.

2.5    The term of this Agreement expires 10 years from the date shown on the cover page.

# 3    CONDITIONS OF RENEWAL

Subject to satisfaction of the conditions below, at the end of the initial 10-year term in clause 2.5, You will have the option to renew the franchise relationship. The first renewal term will be for 10 years. If You satisfy the conditions below and choose to renew again at the end of the first renewal term, You will have one final term of 10 years. Filta may require satisfaction of any or all of the following conditions at each renewal:

3.1    You must notify Filta in writing, not more than 6 Months nor less than 3 Months before the end of the expiring term, that You wish to renew.

3.2    You must have no material breaches of this Agreement outstanding at the date You give the notice referred to in clause 3.1 or in the period between that date and the expiration of the term.

3.3    You must have performed Your obligations during the expiring term to the reasonable satisfaction of Filta.

3.4    At the date You give the notice referred to in clause 3.1, You must be offering to the public all services then approved by Filta as Environmental Kitchen Solutions Services and You must have at least 3 Vans in operation.

3.5    Your gross revenue per Van during the final year of the expiring term must be no more than 15% below the per-Van average for all Filta Vans in the U.S.A. for the same time period (excluding Vans that were not in operation for the entire year). If You fail to satisfy this condition, Filta may either (i) refuse to renew the franchise relationship; or (ii) renew the franchise relationship only if You agree to reduce the size of, or redefine the boundaries of, the Territory.

3.6    Before the end of the expiring term, You must sign a renewal Franchise Agreement in the form then disclosed in the FDD as the Franchise Agreement offered to new franchisees in the U.S.A. (or the form most recently offered, if Filta is not then granting new franchises in the U.S.A.). The renewal Franchise Agreement will take effect the day after the expiring term ends. The provisions of the renewal franchise agreement may differ from and will supersede the terms of this Agreement. However: (1) You will not have to pay another Territory Fee; (2) Filta will not have to perform any pre-opening obligations specified in the new franchise agreement or provide another Sales Support Period; and (3) notwithstanding anything to the contrary in the renewal franchise agreement, Your second 10-year renewal option will continue to be governed by Article 3 of this Agreement. If You exercise Your final 10-year renewal option and satisfy the renewal conditions, including the signing of Filta's then-current form of franchise agreement, You will have such further opportunity to renew as that franchise agreement may specify.

3.7    You must refurbish and upgrade the Equipment and each Van at your own expense, to the extent that Filta reasonably deems to be necessary, within the time prescribed by Filta. If You fail to carry out the refurbishment and upgrading referred to in this clause, Filta will have no obligation to grant a renewal.

3.8    You and any person specified by Filta must complete such re-training or refresher training as Filta may require, at your own expense.

3.9    You and all Owners must execute a general release, in a form satisfactory to us, of all claims against us and our past, present and future affiliates, officers, directors, shareholders, agents and employees.

3.10   If You are renewing for the final 10-year term, You must pay Filta a renewal fee equal to 5% of Your average annual gross revenue for the final two years of the expiring term, but not to exceed $75,000.

## 4    FEES

4.1    You must pay Filta the following amounts:

|  |  |
|---|---|
| Territory Fee | $35,000 |
| Opening Package | $49,950 |
| Total | $84,950 |

Filta will apply any deposit received from You to the Territory Fee when You sign this Agreement. The balance due for the Territory Fee and the Opening Package must be paid to Filta 6 weeks before the Opening Date or 90 days from when You sign this Agreement, whichever is earlier.

4.2    Starting in the 4th Month following the Opening Date, You must pay the Service Fee and Advertising/Promotions Levy to Filta on the Fee Payment Date without any abatement, set off or deduction.

4.3    For all amounts You owe Filta, You must use the payment method that we designate. Because we currently require electronic funds transfer, You must designate an account at a commercial bank (the **"Account"**) and furnish the bank with all authorizations necessary to permit us to transfer funds from the Account. On each Fee Payment Date, Filta will transfer from the Account an amount equal to the aggregate Service Fees, Advertising/Promotions Levy, and Information System User fees then due from You, as determined by Filta from Your online reporting through Quickbooks. On each Supply Payment Date, Filta will transfer from the Account an amount equal to Your aggregate purchases and other amounts then due from You. We will furnish You with a confirmation of each transfer. You agree to maintain sufficient funds in the Account to cover all amounts payable to us. If funds in the Account are insufficient to cover the amounts payable at the time we initiate the funds

transfer, the amount of the shortfall will be deemed overdue, and You agree to pay us, on demand, the overdue amount plus daily interest as provided in clause 4.4, plus any bank fees we may incur as a result of lack of funds in Your Account. Filta may also suspend shipment of filters until such time as the past due amount is paid. These remedies are in addition to any other remedies we may have under this Agreement or applicable law. Our right to effect payment by electronic funds transfer does not impair or diminish Your obligation to make payment when due.

4.4    If any payment due to Filta is not received in full by the due date, You agree to pay us daily interest on the amount owed, calculated from the due date until paid at the rate of 18% per annum (or the maximum rate permitted by law, if less than 18% per annum).

4.5    You agree to pay all applicable taxes and other fees due to any local, state, or federal government arising from the operation of the Franchise. In addition, You must pay to Filta an amount equal to any sales tax, gross receipts tax, or similar tax (other than income tax) imposed on Filta with respect to any payments we receive under this Agreement. You agree to hold us harmless from all claims and demands with respect to taxes that You owe arising from the operation of the Franchise.

## 5    PRE-OPENING OBLIGATIONS

5.1    Filta will provide the following assistance and materials to You before You begin offering services to customers:

    5.1.1    the Manual - upon successful completion of the training specified in clause 5.1.3 below, access to the Manual via the Franchise Portal, for use solely by You and your staff;

    5.1.2    the Opening Package, including preparation of a Van as provided in the Schedule;

    5.1.3    Training - A combination of training at a site designated by Filta, field training, and training in your Territory, all as specified in the Manual.

5.2    At Your own expense, You must obtain a Ford E-250 or Chevrolet Express 2500 Van meeting Filta's specifications before the Opening Date, and You must deliver the Van to a location designated by Filta for Van preparation work under clause 5.1.2. The Van must not be more than two model years old and have no more than 30,000 miles on the odometer at the time You acquire it. If You acquire a used vehicle, You must ensure that a bulkhead and shelving are fitted to Filta's specifications. If You request and Filta approves the use of a model other than the Ford E-250 or Chevrolet Express 2500, You acknowledge that Filta may charge You at Filta's cost for any and all non-standard Van preparation work, which will be in addition to the cost of the Opening Package.

5.3    If You initially enter into this Agreement with Filta as an individual or partnership, You must establish a Company and transfer Your Agreement to the Company before the Opening Date in accordance with clause 20.4 below. You must satisfy the following requirements at the time You organize the Company and throughout the remaining term of this Agreement:

5.3.1   You must provide Filta with proof from the State that the Company is in existence and in good standing.

5.3.2   You must designate, subject to Filta's approval, one of the Owners (the **"Operator"**) to be personally responsible for performance of all obligations and requirements relating to the Franchise. The Operator must have the power to speak for the Franchise and to bind the Company in any dealings with Filta.

5.3.3   The Operator and all other Owners must sign a Personal Guarantee of the Company's obligations in the form prescribed by Filta. The current form of Personal Guarantee is attached to this Agreement.

5.3.4   The legal name of the Company must have no connection whatsoever to Filta's brand identity names for the various Environmental Kitchen Solutions Services. In particular, but not by way of limitation, the legal name of the Company must not contain the word "Filta", "FiltaFry", "cooking", "oil", "filter", "micro-filter", "Environmental", "Kitchen", "Solutions", "FiltaBio", "FiltaCool", "green," "management", or any similar words or phrases.

5.4   Before You attend initial training, You must submit to Filta a basic business plan for Your business, which should include a detailed street level map of Your Territory indicating business corridors and a list of at least 250 potential customers showing where those customers are located.

## 6     TRAINING

6.1   Filta or its designee will train You as specified in clause 5.1.3. Filta will provide lodging, breakfast and lunch for initial training, and You will be responsible for Your travel expenses to and from the training site and all other expenses. You must bear all expenses associated with Your field training and training in Your Territory. Filta has the right to require that any employee You hire who will have access to the MFU also attend training. You must notify Filta each time You hire an employee who will have access to the MFU.

6.2   Filta will make available such on-site advice and further field training as You may reasonably request. Filta may also require You and/or Your employees to attend further training courses at any time during the term of this Agreement, if Filta reasonably considers that such further training is necessary.

6.3   All training under clause 6.2 will be provided at Filta's standard rate, and You will be responsible for all traveling and living expenses and salaries of those attending. The time and place of training will be at the absolute discretion of Filta or its designee, but Filta will try to accommodate Your reasonable requirements.

6.4   Filta will provide You with ongoing advice and guidance by telephone, email, and other forms of communication from Filta's office, as You may from time to time reasonably request, subject to Your provision of such information as Filta may require so as to enable Filta to monitor the performance of the Franchise.

9

# 7      FILTA'S SALES SUPPORT OBLIGATIONS

7.1     Filta will provide the services of one or more business development managers, an existing experienced Filta franchisee or third-party business coach, to be determined in the sole discretion of Filta, for a period of not less than ten (10) working days which includes Saturday (the **"Sales Support Period,"** as it may be extended below), to assist in arranging customer accounts to be serviced by the Franchise. At the end of the Sales Support Period, You and the business development manager, existing experienced Filta franchisee or third-party business coach will jointly certify to Filta the Business Volume achieved as of the end of the Sales Support Period. You and the business development manager, existing experienced Filta franchisee or third-party business coach will also jointly list any demonstrations that have been scheduled but not completed for potential customers by the end of the Sales Support Period (**"Pending Demos"**). Filta may, in its sole discretion, extend the Sales Support Period for as long as Filta elects to continue providing the services of its business development manager(s) in the Territory.

7.2     After the Sales Support Period ends, Filta will assign an employee, existing franchisee or third-party business coach to guide You in marketing the services of the Franchise. This relationship will continue until Business Volume reaches $1,000 per week. You agree that the employee, existing franchisee or third-party business coach may share any and all information about the Franchise with Filta. If Business Volume has not reached $1,000 per week by the end of three Months of operation, You agree to hold a business evaluation conference call with Filta and to establish a business development plan, which may, at Filta's sole option, include on-site advice from a member of Filta's staff or an experienced operator or third-party business coach appointed by Filta.

7.3     Until the earlier of 90 days after the Opening Date or when Business Volume first exceeds $1,000 per week, You must participate in all remote training sessions scheduled by Filta.

# 8      FRANCHISEE'S OPERATING OBLIGATIONS

8.1     **FiltaFry Service**

8.1.1   **Mobile Filtration Unit**

You acknowledge that a principal purpose of the relationship created by this Agreement is to authorize You to provide services using the MFU. You may not use the MFU for any purpose other than the FiltaFry Service under this Agreement. You are responsible for maintaining and repairing the MFU at Your own expense. Any improvements or upgrades to the MFU that You propose and that are subsequently adopted by Filta will become the property of Filta and/or the manufacturer of the MFU. To the extent necessary to give legal effect to such ownership, You agree to assign to Filta all of Your right, title and interest, if any, in such improvements and upgrades, and You agree to execute all assignments, instruments, affidavits, and other documents that Filta may reasonably request to give effect to this provision. You agree not to alter, engineer, reverse engineer, add to, remove any component of, or disable any safety feature of the MFU or any other Equipment supplied by Filta.

Filta warrants the MFU for a period of twelve months against electrical or mechanical failure resulting from defective materials, provided that the breakdown is not due to misuse or operation of the MFU under conditions other than as stated in the Manual, and that the MFU has been maintained pursuant to the maintenance program stated in the Manual. The warranty period begins on the date You take possession of the MFU.

### 8.1.2 MFU Spare Parts and Filters

You acknowledge that use of spare parts and MFU Filters supplied by Filta is a legitimate means to protect Filta's interest in the proprietary nature of the MFU. Accordingly, You must purchase from Filta, and Filta agrees to supply, all of Your requirements of spare parts and MFU Filters. An initial supply of spare parts and MFU Filters is included in the Opening Package. Subject to the right to suspend shipment in clause 4.3, Filta will make additional spare parts and MFU Filters available for purchase at Filta's then-current prices and terms. In order to promote customer satisfaction and to minimize downtime of the MFU, You must have a full complement of spare parts for the MFU on hand at all times. Whenever You use any spare parts, You must immediately order replacement parts as necessary to ensure that You have a complete set. In order to promote customer satisfaction and to comply with Filta's specifications for periodic changing of MFU Filters, You must purchase from Filta a minimum of one (1) box of MFU Filters per Month per MFU that You have in operation. However, if You place an order to purchase an additional MFU, You may request in writing at the time of Your order that Filta waive the filter purchase requirement for the additional MFU for an initial period of three months.

You acknowledge that the life expectancy of a MFU Filter cartridge will vary depending on numerous factors, including but not limited to the type of oil filtered, the quality and temperature of the oil when filtered, the type of food that has been fried in the oil, the volume of food fried, the seasonings, flour content and food additives present in the oil, and the customer's general frying practices. Filta does not guarantee that MFU Filters will perform for any specific period of time or in all conditions. If You do not use the MFU Filters in accordance with Filta's specifications, the life expectancy will be shorter.

## 8.2 FiltaBio Service

### 8.2.1 Concurrently with execution of this Agreement, You agree to execute the FiltaBio Addendum attached to this Agreement as Exhibit 3. The purposes of the FiltaBio Addendum are to facilitate development of the FiltaBio Service, to give You assurance of a sales outlet for the waste cooking oil ("WVO"), and to provide for the aggregation of WVO from You and other Filta franchisees in order to (a) leverage pricing of the WVO, and (b) improve opportunities for consistent sales of the WVO. The program set forth in the FiltaBio Addendum is the "FiltaBio Program." If Filta is operating the FiltaBio Program in Your area of the country at the time of execution of the FiltaBio Addendum, then the terms of the FiltaBio Addendum will take effect immediately. If Filta is not operating the FiltaBio Program in Your area of the country at the time of execution of the FiltaBio Addendum, then notwithstanding the FiltaBio

Addendum, You may sell WVO locally on your own terms, subject to the terms and conditions of this Agreement, until Filta sends You the "FiltaBio Notice" as provided in clause 8.2.2. If Filta has not sent You the FiltaBio Notice within six months after executing the FiltaBio Addendum, You agree to begin paying Filta an ongoing monthly fee equal to 12.5% of your Gross Monthly Revenue from WVO sales (the "WVO Sales Fee"). You must pay the WVO Sales Fee, if applicable, at the same time and by the same method as the Service Fee.

8.2.2    If Filta intends to begin operating the FiltaBio Program in your area, Filta will give You written notice (the "FiltaBio Notice") of the date on which the terms of the FiltaBio Addendum will go into effect, which will not be less than 45 days after the FiltaBio Notice. If Filta issues the FiltaBio Notice at any time after the WVO Sales Fee has commenced under clause 8.2.1, the WVO Sale Fee will terminate when the FiltaBio Program begins, except as to any amount due for the period before the start of the FiltaBio Program.

8.3    **FiltaCool Service**

8.3.1    You acknowledge that a principal benefit of the relationship created by this Agreement is to give You access to the filters used in the FiltaCool Service. An initial supply of filters and holders is provided to You as part of the Opening Package. Filta agrees to supply (subject to the right to suspend shipment in clause 4.3), and You agree to purchase from Filta, all of Your requirements of FiltaCool filters and holders.

8.3.2    You agree to distribute the filters to customers on a monthly rental basis as outlined in the Manual. You agree to change out and de-gas at least once each quarter all filters at each customer location. Starting in the 6th month of operation, you must pay us a service fee of $3 per filter per month. After 27 months, you can return the spent filters to us for disposal. You can return unspent FiltaCool filters to us before the end of the 27 months for a restocking fee of $8 per filter.

8.3.3    You must purchase at least 40 filters per year in order to demonstrate diligent efforts to expand the FiltaCool business in the Territory. If You fail to purchase at least 40 filters in any year, Filta will have the right to revoke your exclusivity under clause 2.2 for the FiltaCool Service in the Territory on reasonable notice. If Filta revokes Your exclusivity for the FiltaCool Service as provided above, You may continue to service FiltaCool accounts but Filta may also solicit and service FiltaCool accounts, directly or through others, in the Territory.

8.4    **Purchasing of Supplies and Additional Vans**

8.4.1    You must purchase all items bearing the Filta logo (including, but not limited to, Van graphics, uniforms, Stationery, and FryChem cleaning solution) and all items relating to the MFU (including, but not limited to, Van ramps and machine parts) from Filta or a supplier designated by Filta. You may obtain all other supplies from any reputable and reliable vendor, provided that the items satisfy the standards and specifications issued by Filta from time to time.

8.4.2   Each additional Van that You purchase or lease for the Franchise must satisfy the requirements in clause 5.2. You may purchase or lease the additional Van from any source, provided that the Van meets Filta's specifications and standards and You obtain our written approval.

8.4.3   You agree not to assert any claims against Filta (or any officer, director or affiliate of Filta) with respect to any products and services that You obtain from third-party suppliers that are not affiliated with Filta by ownership. You must assert any such claims only against the supplier in question.  You must provide Filta with written notice before taking any action in connection with such a claim. Filta will use diligent efforts to assist You in resolving any disputes with suppliers approved and/or designated by us.

## 8.5     No Resale or Transshipping

You are prohibited from selling or transshipping any MFU, MFU Filters, FiltaCool filters, or any other Equipment, supplies, or materials that You obtain from Filta, except that if another Filta franchisee experiences an emergency or an unforeseen shortage, You may offer to assist that franchisee with Filta's prior written consent.

## 8.6     General Requirements

You must:

8.6.1   when reasonably requested, demonstrate that You have adequate financing available to enable You fully to develop the Franchise in accordance with this Agreement;

8.6.2   carry on the Franchise to the highest standards of service;

8.6.3   use best endeavors to promote the Franchise and increase the demand for the Environmental Kitchen Solutions Services;

8.6.4   use in the operation of the Franchise only the filters, Equipment, Vans, Stationery, uniforms, and supplies that have been expressly approved by Filta or that satisfy the standards and specifications issued by Filta from time to time;

8.6.5   keep the Vans, MFU and uniforms clean and attractive to customers at all times, and maintain the Vans and all Equipment in the highest mechanical condition, including but not limited to performing daily, weekly and monthly servicing of the MFU as prescribed in the Manual and updating the Van graphics as necessary to comply with Filta's specifications;

8.6.6   not do anything that may bring Filta, the Proprietary Marks, the System, or the Franchise into disrepute, cause a customer to terminate a National Account Contract, or otherwise have a detrimental effect on Filta, the Proprietary Marks, the System, or the Franchise;

8.6.7    comply with all statutes, laws and other legal requirements relating to the Franchise. This includes, but is not limited to, all federal, state and local laws regarding the transport, storage and disposal of waste cooking oil. You must at Your own expense obtain (and maintain) all licenses, permits and approvals (if any) that may be required;

8.6.8    permit Filta and any person authorized by Filta, on 72 hours' notice, to inspect Your facilities and operations during normal business hours (including but not limited to Your Vans, MFUs, waste oil storage facility, warehouse, or other areas where You keep Equipment, supplies or waste oil), to interview your employees in person or by other means, and to take copies or samples of any item relating to the Franchise;

8.6.9    devote Your full time and best efforts to the Franchise, and not engage in or be involved in any business other than the Franchise without the prior written consent of Filta. Based on its experience, Filta has determined that it will not consent to, and You acknowledge that You are prohibited from, engaging in the production of biodiesel;

8.6.10   except as permitted by clause 2.4, not operate the Franchise or provide services to customers outside of the Territory; and

8.6.11   not permit any person other than the Operator to manage the Franchise without Filta's prior written consent.

## 8.7    Compliance with Manual

8.7.1    You must comply with all mandatory elements of the Manual, as posted on the Franchise Portal and amended and supplemented by Filta from time to time. Any additions to or alterations of the mandatory portions of the Manual must be commercially reasonable in light of the requirements of this Agreement, the development of the System, the needs and desires of customers, general commercial practices in franchising, and the out-of-pocket costs of complying with the addition or alteration.

8.7.2    The Manual at all times remains the sole and exclusive property of Filta. You acknowledge that the copyright in the Manual vests in Filta. Neither You nor any other person subject to Your direction and control will print, download, or otherwise make any copies of the Manual without the prior written consent of Filta.

## 8.8    Monitor Sheets

You must record all pre-service and on-going monitoring activity at each customer site on a monitor sheet in the form prescribed by the Manual. Each monitor sheet must be signed by the manager or most senior representative of the customer at the site. Until the earlier of 90 days after the Opening Date or when Your Business Volume first exceeds $1,000 per week, You must send Filta a copy of all monitor sheets by fax or other method that Filta specifies, by the 10th day of the Month preceding the activity. Thereafter, You do not have to send a

copy to Filta unless requested, but all information required by this clause must be available at any time upon reasonable request by Filta;

## 8.9    Use of Name and System

8.9.1    You may use the Proprietary Marks only in connection with the Franchise. You may not, without Filta's prior written consent, register any company name or trademark or make use of any business name incorporating any of the Proprietary Marks or incorporating any similar sounding name.

8.9.2    All telephone answering messages, email autosignatures, and other identifiers of the Franchise must be in the form prescribed in the Manual from time to time.

8.9.3    You may use only such signs, display materials, promotional literature, and other items in connection with the Franchise as have been approved in writing by Filta. At Filta's request, You must immediately desist from the use or display of any signs, materials or objects.

## 8.10    Trading

You must:

8.10.1    sell or provide only such approved products or services as may be prescribed by Filta from time to time in the Manual;

8.10.2    promptly inform Filta of all relevant details of any inquiry from a potential customer outside of the Territory;

8.10.3    as and when You receive a request from Filta, provide a full list of the customers that You are servicing, with such other details as Filta may reasonably require.  You acknowledge that Filta has the rights, among other things, to: (a) solicit customers that You are servicing to enter into a National Account Contract; (b) deal directly with customers under existing National Account Contracts; and (c) contact customers for commercial purposes other than the Environmental Kitchen Solutions business.  Upon expiration or termination of this Agreement for any reason, You may not retain or use any customer lists or other data that You have collected from customers in connection with the Franchise;

8.10.4    operate the Franchise at least Monday through Saturday to meet the needs of customers. You recognize that You may need to operate Your franchise during evening, weekend and holiday hours in order to provide service at times convenient to customers;

8.10.5    pay Your vendors in accordance with their terms of payment;

8.10.6    promptly replace or refund to the customer the cost of any product or services supplied by You which does not conform with the high standards required by the System;

8.10.7    not make any statement, representation, or claim or give any warranty to any person in respect of products and services offered by the Franchise, except as specifically authorized in the Manual; and

8.10.8    not contact a corporate headquarters of any National Account Contract customer listed on the Franchise Portal without the express consent of Filta.

## 8.11    Web Site Leads and Online Presence

8.11.1    Filta will refer to You without charge any leads that Filta receives through its web site, provided that (i) the inquiry is not from a person in an organization that has a National Account Contract, and (ii) Filta is able to determine that the potential customer is located in Your Territory. If You do not promptly respond to the potential customer, Filta may contact or service the customer, or refer the customer to a franchisee outside of Your Territory for service.

8.11.2    Unless agreed to in writing by Filta, You may not register, maintain or sponsor any URL, web site, social networking profile, discussion forum, blog, email account, text address, or other electronic identifier or electronic, mobile or Internet presence for the Franchise or that otherwise uses or displays any of the Proprietary Marks or any derivative thereof or promotes any products or services similar to those of the Franchise. We have the right to prescribe rules and policies for such activities in the Manual. If we authorize You to engage in any such activities, You agree to adhere to our rules and policies, as amended from time to time, and not to make any statements about Filta or any franchisee or competitor of Filta that may constitute trade disparagement.

## 8.12    Information Systems

### 8.12.1    Franchise Portal

The Franchise Portal will have such features and terms of use as Filta may determine from time to time. You must use the Franchise Portal to access the Manual and for reporting, training, or other purposes as directed by Filta from time to time. You must maintain at all times an active broadband internet connection and must install and use a separate web connector software program provided by Filta. You must log-on to the Franchise Portal at least once per week and read all email, news, Manual updates and other items.  Starting in the 1st Month after the Opening Date, You must pay the then-current user fee on the Fee Payment Date for access to the Franchise Portal.

### 8.12.2 Quickbooks

You must install and use Quickbooks for your businesses bookkeeping and invoicing needs. The Quickbooks program must be installed on Your computer prior to the Opening Date.

### 8.12.3 System Maintenance

You must maintain Your Information Systems in good working order at all times and must ensure that Your employees are adequately trained in the use of the computer system and the Franchise Portal. You must transmit data to Filta via the Franchise Portal as specified in Article 11 below. You must bear all costs of installation, operation, and maintenance of Your Information Systems.

### 8.12.4  Upgrades

Filta has the right to require upgrades in equipment and software from time to time, provided that, for any such request by Filta, You will not be obligated to spend more than $1,000 and You will not be obligated to spend more than $2,500 in the aggregate for such upgrades over the initial 10-year term of this Agreement. You must acquire and install, at Your own expense, computer equipment and software meeting the specifications set out in the Manual from time to time.

## 8.13  Customer Endorsements

You acknowledge that customer endorsements are critical to the marketing of the Environmental Kitchen Solutions Services and that such endorsements are shared throughout the franchise network via the Franchise Portal. You agree to deliver to Filta a minimum of 6 separate testimonial letters from customers that You are servicing, written on the customer's business stationery, during each of Your first three years of operation, for a total of no fewer than 18 by the end of the third year. If You obtain more than the required number of testimonials by the end of the first two years, the excess number will reduce the number required in the following year.

## 8.14  Brand Integrity and Quality Assurance

You must comply fully with Filta's brand integrity and quality assurance programs. The programs may include, among other things, customer satisfaction surveys, mystery shopper reports, employee satisfaction and perception surveys, health and safety reviews, observation of services as they are being performed, assessment of the use of Proprietary Marks, and inspection of the Vans, MFUs, warehouse, waste oil storage facility, Equipment, supplies, Stationery, and marketing materials. If You fail to achieve the minimum score prescribed in the Manual for a specific brand integrity or quality assurance assessment, Filta may require You and/or your employees to complete additional training at a location that we designate, at your expense. In addition, You must pay Filta's out-of-pocket costs (including any fees paid to third-party vendors) to carry out a follow-up assessment. Your failure to achieve the prescribed minimum score on two consecutive assessments or on three or more assessments in any five (5) year period will constitute a material breach of this Agreement.

8.15   **Van Tracker**

Each Van that You operate must be equipped with the geo-location device and subscribed to the geo-location service designated by Filta from time to time. Filta will pay for and install the geo-location device for Your first Van. For each additional Van that You acquire under clause 8.4.2, Filta will install the geo-location device at Your expense. Filta will pay 50% of the monthly tracking fee for each Van. You acknowledge that Filta will have access to all data generated by the geo-location service and You hereby consent to Filta's access to and use of that data for internal purposes related to the Environmental Kitchen Solutions business. Filta will not sell or transfer such data to any third party outside of the FILTA ENVIRONMENTAL KITCHEN SOLUTIONS franchise system without Your prior consent. You acknowledge that, to the extent that You elect to make personal use of the Van not related to the Franchise, such data will reflect Your personal use, and You agree that Filta will have no liability for collection of or access to such data. Your failure to keep the geo-location service in operation, except in cases of unavoidable mechanical failure, will constitute a material breach of this Agreement.

## 9     NATIONAL ACCOUNT CONTRACTS AND CENTRALIZED ACCOUNTS

9.1   **National Accounts**

You acknowledge that Filta's negotiation of National Account Contracts, including rates and services to be performed, enhances the potential value of the Franchise and inures to Your benefit as well as to the benefit of Filta and other Filta franchisees. Accordingly, You agree to the following terms:

9.1.1   Subject to clause 9.1.2 below, You must service National Account Contracts in the Territory on behalf of Filta, in accordance with the pricing and other terms negotiated between Filta and the National Account Contract customer. You may not enter into any relationship with a customer that, in Filta's reasonable judgment, conflicts with a National Account Contract with that customer. You must comply with all rules and regulations that Filta may issue from time to time for National Account Contracts.

9.1.2   Unless otherwise directed by Filta, all billing and collection for services performed under a National Account Contract will be done by Filta. Filta will synchronize with your Information Systems weekly for downloading National Account Contract invoices and processing them for submittal to the National Account Contract customer. You must also leave an invoice at each site where You perform services. This invoice must be in the form of Filta's National and Centralized Account Invoice. Within 30 days after Filta's receipt of payment and remittance advice from the customer showing that the payment is for National Account Contract services that You performed, Filta will remit such payment to You, except that Filta will have the right to deduct up to 10% of the amount invoiced in order to compensate Filta for marketing and negotiating the National Account Contract and for providing billing and collection services, customer relations, and administration of the National Account program. Certain National Account Contracts may require additional volume rebates from Filta, which Filta will negotiate with the customer on a case-by-case

basis. If an additional rebate is required, notwithstanding clause 9.1.1, You will have the option not to participate in that National Account Contract. Filta will have no obligation to pay You for National Account Contract services if You have not submitted the appropriate documentation to Filta in the manner specified in the Manual.

9.1.3    You understand that certain National Account Contracts may require You to comply with account specific rules of service, which may include but not be limited to check in and check out procedures, mandatory days of service, fixed service routines, and reporting methods as a condition of servicing the brand's locations. Filta will notify You of any special service obligations and may require You to agree in writing to follow the rules of service as a condition of participating in the National Account Contract. If You fail to satisfy the conditions and obligations of any National Account Contract, or choose not to provide service under any National Account Contract, Filta will have the right to service and/or authorize others to service the National Account Contract within the Territory without any compensation to You. Filta will have no obligation to readmit You into the National Account program or to transfer any National Account Contract business to You if You are subsequently willing and able to provide service within the Territory. Service of National Account Contracts by Filta and/or its designee in accordance with this clause will not be deemed to violate clause 2.2.

9.2    **Centralized Accounts**

You acknowledge that a customer that You are servicing may request to be designated as a Centralized Account even though the customer may not wish to enter into a National Account Contract with Filta. If a customer requests to be designated as a Centralized Account, all billing and collection for services performed for that customer will be done by Filta. You must follow the invoicing and reporting procedures as specified by Filta from time to time. Within 30 days after Filta receives payment and remittance advice from the Centralized Account customer showing that the payment is for services that You performed, Filta will remit such payment to You, except that Filta will have the right to deduct up to 5% of the amount invoiced in order to compensate Filta for its billing, collection, and administration services. Filta will have no obligation to pay You for services to a Centralized Account customer if You have not submitted the appropriate documentation to Filta in the manner specified in the Manual.

## 10    TELEPHONE NUMBERS

10.1    You must inform Filta before the Opening Date of all telephone numbers which You propose to use in connection with the Franchise (the **"Telephone Numbers"**). You must sign and provide to Filta a Contingent Assignment of Telephone Numbers authorization in the form of Exhibit 1 to this Agreement. Filta will not make use of the Contingent Assignment of Telephone Numbers until the expiration or termination of this Agreement.

10.2    You must use the Telephone Numbers exclusively for the Franchise and no other business. You may not subscribe for, either directly or indirectly, or use telephone numbers other than

the Telephone Numbers for the Franchise, unless Filta has been previously informed in writing. You must if so requested by Filta execute an updated Contingent Assignment of Telephone Numbers relating to the further telephone numbers.

# 11    REPORTS AND RECORDS

11.1    You must maintain accurate books of account and supporting records of all business conducted by the Franchise, including but not limited to all invoices, credit notes, statements and delivery notes and the pre-commencement and on-going monitor sheets referred to in clause 8.8. You must input into Quickbooks all invoices within two (2) days from services being rendered. You must submit to Filta a statement of Gross Monthly Revenue through the close of business on the last working day of each Month. You must prepare, in the form set out in the Manual, a monthly financial statement and such other reports as Filta may prescribe, and allow Filta ongoing access to Your Quickbooks invoices and lists of the customers that You are servicing. You must submit the financial statement and reports to Filta on or before each Fee Payment Date and allow Filta to access your Information Systems as often as Filta deems necessary, which will be no less than once a week on each Monday. If for any reason You fail to allow Filta access or fail to submit any of the reports or information required by this Article 11 by any due date, You will be in material breach of this Agreement and Filta will have the right to: (i) charge You a fee of $75 for each week Filta is unable to access Your Information Systems, (ii) charge You a fee of $75 per late report for each week that the report is late, and/or (iii) terminate this Agreement.

11.2    You must preserve all books of account and records for not less than five years from the date of their preparation, notwithstanding the expiration or termination of this Agreement. You must submit to Filta copies of all sales tax returns as and when they are submitted to any taxing authority.

11.3    Within 90 days after the end of Your fiscal year, You must provide to Filta a balance sheet as of the end of the fiscal year, an income statement showing the results of operation of the Franchise during the fiscal year, and such other financial statements as Filta may specify, each of which must be compiled in accordance with GAAP and general good business practices, and done at Your own expense by either an independent certified public accountant or using QuickBooks as required by this Agreement. You must also furnish to Filta such other accounting and management information as may be set out in the Manual from time to time, and any other information which Filta may from time to time reasonably require.

11.4    Filta is entitled, directly or through a third-party agent designated by Filta: (i) upon 72 hours' notice, to examine or audit Your books and records at Your offices, using any combination of Filta's own personnel and/or outside service providers; and (ii) upon 10 business days' notice, to require You to assemble, copy and deliver financial statements and other books and records to Filta or its agent for examination or audit at Filta's or the agent's offices. All books, records, accounts, correspondence, data, financial statements, and tax returns related to the Franchise shall be made available for any such examination or audit. You must cooperate fully with the persons making the inspection, examination or audit on Filta's behalf.

11.6    If an examination or audit is performed due to (i) Your failure to submit required reports or financial statements, or (ii) Your failure to maintain books and records as provided herein, or if the Gross Monthly Revenue reported for any period of three consecutive months is more than 10% below the actual Gross Monthly Revenue for the period as determined by the examination or audit, then You agree to pay Filta the reasonable and customary cost of the examination or audit, including travel and lodging expenses for the examiners or auditors. For purposes of calculating the reasonable and customary cost, Filta will use hourly rates for its own personnel that are commensurate with the rates of mid-level professionals of independent accounting firms.

## 12    INSURANCE

You must, at Your own expense, maintain insurance covering the risks and with the minimum policy limits specified in the Manual from time to time. You must obtain the insurance coverage from an A rated insurance carrier before undertaking any activities in connection with the Franchise. You must cause Filta, its affiliates, and their respective officers, directors, and shareholders to be named as additional insureds on such policies of insurance with respect to all matters within the scope of the indemnity in Article 24 below. You must promptly notify Filta in the event of any insurance claim being made or any other material event, including cancellation or threatened cancellation of such insurance policies by the insurer. You have sole responsibility for obtaining all required insurance policies and the policy documents before beginning operation of the Franchise.

## 13    STAFFING

13.1    You have sole responsibility for all employment decisions and functions of the Franchise, including hiring, firing, training, wage and hour requirements, recordkeeping, supervision, and discipline of your employees. You must maintain a competent, conscientious, trained staff with enough members to operate the Franchise in conformance with our standards. You must take such steps as are necessary to ensure that your employees preserve good customer relations; render competent, prompt, courteous, and knowledgeable service; and meet any minimum standards that we may establish from time to time in the Manual.

13.2    You must ensure that all employees wear such uniforms as Filta reasonably requires and that they are repaired and cleaned regularly.

13.3    You must obtain a signed confidentiality agreement from all persons employed by or who provide services to You. The form of confidentiality agreement must be acceptable to Filta and name us as a third-party beneficiary with the independent right to enforce the agreement. You may disclose Confidential Information only to persons who have signed a confidentiality agreement that complies with this section.

13.4    You and all employees designated by Filta must attend such further periods of training as may from time to time be reasonably required by Filta and bear any travel and subsistence expenses and the salaries of such persons.

# 14    ADVERTISING/PROMOTIONS

14.1    You must pay the Advertising/Promotions Levy to Filta in accordance with clause 4.2, without any abatement, set off or deduction.

14.2    Filta will maintain separate accounting for the Advertising/Promotions Levy but Filta has no obligation to maintain a separate account to hold the funds. Filta will expend the Advertising/Promotions Levy in such activities as Filta, in its absolute discretion, considers to be appropriate to properly promote the Environmental Kitchen Solutions Services, including, but not limited to: advertising campaigns in various media; direct mail advertising; conducting and administering promotions; creative development; market research and development, including secret shoppers and customer satisfaction surveys; employing advertising and/or public relations agencies; production of advertising and promotion; creation and maintenance of an Internet site, social networking accounts, mobile applications, and other electronic identifiers; and reasonable administrative expenses related to these efforts (including accounting fees and, if Filta deems it necessary, reasonable attorney's fees for review of proposed advertising and promotional materials). Filta will have final discretion over creative concepts, materials, and media (including online, mobile and other electronic media) used in such activities and their placement. We do not guarantee that You will benefit from these activities  in proportion to Your Advertising/Promotion Levy. Filta has the right, but no obligation, to advance monies for use in advertising and promotion activities under this clause and to pay back any such advances from subsequent Advertising/Promotion Levy monies received from franchisees.

14.3    Filta will prepare an unaudited annual report of Advertising/Promotion Levy monies received and expended. The report will be available to You upon request within 120 days after Filta's fiscal year end.

14.4    You may not publish or distribute any advertising or promotional material unless it has been approved in writing by Filta, which approval will not be unreasonably withheld or unduly delayed. You must immediately cease the use of any advertising or promotional material upon receipt of a request from Filta to do so.

14.5    You must prominently display and distribute point of sale marketing material supplied by Filta.

# 15    TRADEMARKS

15.1    You may not apply for registration as owner of any of the Proprietary Marks.

15.2    You acknowledge that, as between You and Filta, the goodwill and all other rights in and associated with the Proprietary Marks vest absolutely in Filta, and that all such rights will at all times hereafter and for all purposes remain vested in Filta. If any such rights are deemed at any time to accrue to You, You will at Your own expense, forthwith on demand do all such acts and things and execute all  such documents as Filta may deem necessary to vest such rights absolutely in Filta.

15.3    If Filta designates any new or different trademark for use in the System after the date of this Agreement, You will have rights to use such trademarks as if they had been included in the Schedule to this Agreement at the date hereof, and where the context so allows, all references in this Agreement to the Proprietary Marks will be deemed to include a reference to such further marks.

15.4    You must immediately notify Filta of all circumstances coming to Your attention which may constitute an infringement of any of the Proprietary Marks or may constitute passing off in respect of the Filta name. You must take such reasonable action as Filta may direct, at the expense of Filta, to assist Filta in the protection of the Proprietary Marks.

# 16    IMPROVEMENTS AND NEW SERVICES

16.1    You may not introduce any improvement or modification of or to the System or the Franchise without the prior written consent of Filta. You must notify Filta promptly of any improvement in or modification of or to the System which may be beneficial to Filta or other franchisees. Any such improvement or modification shall be deemed to be owned exclusively by Filta. Filta may use and permit others to use such improvement or modification without any obligation to make any payment to You.

16.2    From time to time Filta may introduce new products or services that Filta deems to be complementary to the existing services offered under the System, provided that Filta has tested delivery of the new product or service through a Filta franchisee. Once You have received written notice from Filta that it has introduced a new product or service, within forty-five (45) days You must give Filta written notice of Your intention to offer and sell the new product or service as part of Your franchise. You must pay any start-up costs, fees and expenses associated with the new product or service, which may include licensing fees, equipment and material costs, charges for marketing materials, and other expenses related to the new product or service introduced by Filta. If You reject the opportunity to offer or sell the new product or service, Filta has the right to enter Your territory and either offer or sell the new product or service itself or designate a third-party, which may include another franchisee, to do so on Filta's behalf. You will receive no compensation from Filta or the designated third-party derived from the offer or sale of the new product or service in the Territory. Failure to provide Filta the required written notice within the prescribed time period will be considered a rejection of the opportunity to offer the new product or service.

# 17    CONFIDENTIAL INFORMATION

17.1    You may not, during the term of this Agreement and for a period of five years after expiration, termination, non-renewal, or transfer of this Agreement,  communicate or divulge Confidential Information to any unauthorized person or use Confidential Information for your own benefit or for the benefit of any other person in any manner other than in connection with the Franchise. You may divulge Confidential Information only to your employees and agents who must have access to it in order to carry out their duties relating to the Franchise. All information, knowledge, trade secrets, know-how, techniques, and other data which we designate as confidential will be deemed to be Confidential Information for purposes of this Agreement, except information which You can demonstrate came to Your attention by lawful

means before we disclosed it to You, or which, at or after the time of our disclosure to You, had become or later becomes a part of the public domain, through publication or communication by others.

17.2   At our request, your Owners, officers, and managers must execute confidentiality agreements in a form satisfactory to Filta. The agreements must name Filta as a third-party beneficiary with the independent right to enforce the agreement. You agree to use your best efforts to obtain similar agreements from any other person outside of your organization to whom You wish to disclose any Confidential Information.

## 18    FILTA'S RIGHT TO COMMUNICATE WITH CUSTOMERS

The customers serviced by Your Franchise are Filta's customers. In order to protect the reputation of Filta and the Filta Environmental Kitchen Solutions services and to maintain satisfactory public relations, Filta reserves the right to communicate directly with customers at any time to ascertain the quality of the service provided by the Franchise and to discuss any other matters related to the Franchise. You must upon request provide such reasonable assistance as may be necessary for this purpose.

## 19    ASSIGNMENT BY FILTA

Filta has the unrestricted right at any time to transfer or assign all or any part of our rights and obligations under this Agreement to any person or legal entity without Your consent. You agree that we will have no liability after the effective date of transfer or assignment for the performance of, or any failure to perform, any obligations transferred. We also have the absolute right to delegate any of our duties under this Agreement.

## 20    TRANSFER

In this Article 20, "Transfer" as a verb means to sell, assign, give away, pledge, or encumber, either voluntarily or by operation of law (such as through divorce or bankruptcy proceedings), any interest in this Agreement, any interest in the Franchise, or (if You are a corporation, partnership, or limited liability company) any ownership interest in You. "Transfer" as a noun means any such sale, assignment, etc.

20.1   **No Transfer Without Filta's Consent**

Neither You nor any of the Owners may make any Transfer or permit any Transfer to occur without obtaining Filta's prior written consent as provided in clause 20.2 through 20.7. We have the right to communicate with and counsel both You and the proposed transferee on any aspect of a proposed Transfer. No Transfer which requires our consent may be completed until at least 90 days after we receive written notice of the proposed Transfer. You agree to provide any information and documentation relating to the proposed Transfer as we reasonably require. We may withhold our consent on any reasonable grounds, including, but not limited to, failure to satisfy any of the conditions we impose under clause 20.2 or 20.3.

20.2  **Transfer Of Entire Business**

If You propose to Transfer all or substantially all of the Franchise, the following conditions apply (unless waived by us):

20.2.1    You must be in compliance with all obligations to us under this Agreement or any other agreement with us or our affiliates, including all monetary obligations, as of the date of the request for our approval of the Transfer, or You must make arrangements satisfactory to us to come into compliance by the date of the Transfer.

20.2.2    The proposed transferee must:

(i)    Demonstrate to our satisfaction that he or she meets all of our requirements to become a Filta franchisee. Filta will respond to an application for consent to Transfer within 30 days after we have received all information that we have requested with respect to the proposed transferee. We may approve a proposed transferee on a provisional basis subject to successful completion of our then-current training requirements and satisfaction of the other requirements for Transfer. If the proposed transferee is one of our other franchisees, he or she must not be in default under his or her agreements with us and must have a good record of service and compliance with our operating standards.

(ii)    At our option, execute either (a) an agreement in a form acceptable to Filta by which the transferee assumes all of Your obligations under this Agreement for the remainder of the then-current term of the Franchise; or (b) execute a new Franchise Agreement in the form disclosed by Filta in its then current FDD or the form most recently offered, if Filta is not then granting new franchises in the U.S.A.) for an initial 10-year term.

(iii)    Make arrangements to modernize and upgrade the Vans and Equipment, at the transferee's expense, to conform to our then-current standards and specifications.

20.2.3    You must pay a nonrefundable fee of $250 for each individual associated with the proposed transferee who attends our "Discovery Day" or similar event in connection with the proposed Transfer, whether or not You go forward with the Transfer. If You proceed with the Transfer, You must pay a nonrefundable fee of $950 per individual Owner to cover Filta's costs of investigating the proposed transferee. Filta will credit the $250 fee, if applicable, toward payment of the $950 fee. In addition, if Filta gives consent and You complete the Transfer, You must pay Filta a transfer fee of (i) 10% of the purchase price, if Filta referred the buyer to You; or (ii) 7.5% of the purchase price, if You found the buyer without Filta's assistance. Filta will waive the transfer fee (but not any other conditions) if the transferee is a member of Your immediate family (i.e., spouse, son, or daughter).

20.2.4    You and all Owners must execute a general release, in a form satisfactory to us, of all claims against us and our past, present and future affiliates, officers, directors, shareholders, agents and employees. You and all Owners will remain liable to us for all obligations which arose prior to the effective date of the Transfer in connection with the Franchise, and must execute any and all instruments we reasonably request to evidence such liability.

20.2.5    If the transferee is a corporation or other entity, the owner or owners of a beneficial interest in the transferee must execute our then-current form of personal guarantee to ensure performance of the transferee's obligations to us.

## 20.3    Transfer Of Minority Ownership Interest

For any proposal to admit a new Owner, to remove an existing Owner, or to change the distribution of ownership of the Franchise, or for any other transaction that amounts to the Transfer of a minority interest in the Franchise, You must give Filta advance notice and submit a copy of all proposed contracts and other information concerning the Transfer that Filta may request. Filta will have the right to charge a preliminary fee of $250 per individual who attends Discovery Day, an investigative fee of $950 for each proposed new Owner, and to require reimbursement of any out-of-pocket expenses incurred in reviewing the proposed Transfer. Filta will have a reasonable time (not less than 30 days) after we have received all requested information to evaluate the proposed Transfer. You must satisfy the conditions in clause 20.2.1, 20.2.4, and 20.2.5. Filta may withhold its consent on any reasonable grounds or give our consent subject to reasonable conditions.

## 20.4    Transfer To A Corporation or LLC

We will consent to the Transfer of this Agreement to a Company that You form for the convenience of ownership, provided that You comply with the requirements in clauses 5.3, 20.2.1, 20.2.4, and 20.2.5. If You Transfer to a new or different Company formed for the convenience of ownership after the Opening Date, You must also pay a fee, not to exceed $750, for Filta's administrative costs in connection with the Transfer.

## 20.5    Transfer Upon Death, Incapacity or Bankruptcy

If You or any Owner dies, becomes incapacitated, or enters bankruptcy proceedings, that person's executor, administrator, personal representative, or trustee must apply to Filta in writing within thirty (30) days after the event (death, declaration of incapacity, or filing of a bankruptcy petition) for consent to Transfer the person's interest. If written notice is not given within thirty (30) days, Filta may terminate this Agreement immediately. Any Transfer under this clause 20.5 will be subject to the provisions of clause 20.2 or 20.3, except that no transfer fee will be charged by Filta. If the deceased or incapacitated person is the Operator (as defined in clause 8.8), Filta will have the right (but not the obligation) to take over operation of the Franchise until the Transfer is completed and to charge a reasonable management fee for our services. For purposes of this clause 20.5, "incapacity" means any physical or mental infirmity that will prevent the person from performing his or her obligations under this Agreement (i) for a period of 30 or more consecutive days or (ii) for 60 or more total days during a calendar year. In the case of Transfer by bequest or by intestate

succession, if the heirs or beneficiaries are unable to meet the conditions of clause 20.2 or 20.3, the executor may transfer the decedent's interest to another successor that Filta has approved, subject to all of the terms and conditions for transfers contained in this Agreement. If an interest is not disposed of under this clause 20.5 within one hundred fifty (150) days from the date written notice for consent to Transfer was given informing Filta after an event of death, incapacity, bankruptcy or permanent disability, unless extended by order of probate or bankruptcy proceedings, Filta may terminate this Agreement immediately.

## 20.6  Non-Conforming Transfers

Any purported Transfer that is not in compliance with this Article 20 is null and void and constitutes a material breach of this Agreement, for which we may terminate this Agreement without opportunity to cure. Our consent to a Transfer does not constitute a waiver of any claims that we have against the transferor, nor is it a waiver of our right to demand exact compliance with the terms of this Agreement.

## 20.7  Right Of First Refusal

Filta has the right, exercisable within 30 days after receipt of the notice specified in clause 20.1, to send written notice to You that we intend to purchase the interest proposed to be Transferred, or we may name a designee to purchase the interest. If the Transfer is proposed to be made pursuant to a sale, we or our designee may purchase the interest proposed to be Transferred on the same economic terms and conditions offered by the third party. Closing on our purchase must occur within 60 days after the date of our notice to the seller electing to purchase the interest. If Filta cannot reasonably be required to furnish the same consideration as the third party, then we may purchase the interest proposed to be sold for the reasonable equivalent in cash. If the parties cannot agree within 30 days on the reasonable equivalent in cash, we will designate, at our expense, an independent appraiser and the appraiser's determination will be binding on all interested parties. Any material change in the terms of the offer from a third party after we have elected not to purchase the seller's interest will constitute a new offer subject to the same right of first refusal as applied to the third party's initial offer. If a Transfer to which this clause 20.7 applies is proposed to be made by gift, we will designate, at our expense, an independent appraiser to determine the fair market value of the interest proposed to be transferred. We may purchase the interest at the fair market value determined by the appraiser. Closing on the purchase will occur within 30 days after our notice to the transferor of the appraiser's determination of fair market value. If we elect not to exercise our rights under this clause 20.7, the proposed transferor may complete the transfer after complying with clause 20.1 through 20.7. Filta's right of first refusal in clause 20.7 will not apply to a Transfer under clause 20.4, a Transfer between existing Owners under clause 20.3, or a Transfer by an Owner to his or her spouse, son, or daughter upon death or disability of the Owner, so long as the Transfer does not result in a change of control of the Company.

## 21    TERMINATION

21.1    In addition to any other termination rights specified in this Agreement, Filta may terminate this Agreement immediately by giving notice in writing to You in any of the following circumstances:

21.1.1    if You fail to commence operation of the Franchise within 6 Months from the date of Filta's execution of this Agreement;

21.1.2    if any amount payable to Filta is 60 days overdue, Filta sends You a demand for payment, and You fail to pay the overdue amount within 5 days after Filta's demand;

21.1.3    if You engage in any conduct that threatens health or safety, causes a customer to terminate a National Account Contract, or is likely to have a material detrimental effect on the goodwill of Filta, the System, the Proprietary Marks, or other Filta franchisees;

21.1.4    if You conduct any business outside of the Territory other than as expressly permitted by clause 2.4;

21.1.5    if You fail to submit any report or information required by Filta within 3 weeks  after its original due date;

21.1.6    if You refuse to permit an inspection or audit of Your Vans, MFUs, warehouse, waste oil storage facility, operations, books or records as provided in this Agreement;

21.1.7    if You disclose to any unauthorized person or allow the disclosure of any part of the Manual or other Confidential Information;

21.1.8    if You fail to obtain prior written approval or consent of Filta expressly required by this Agreement;

21.1.9    if You (or any of the Owners) submit to Filta any report or information that You know or should know to be false or misleading, either in connection with Your application for the Franchise or in connection with its operation;

21.1.10    if You cease or threaten to cease to conduct business for 3 or more consecutive business days without Filta's prior approval, or for any shorter period in circumstances where it is reasonable for Filta to conclude that You do not intend to promptly resume operations within the Territory;

21.1.11    if You use the MFU other than as intended or alter, engineer, reverse engineer, add to, remove any component of, or disable any safety feature of the MFU or any other Equipment supplied by Filta;

21.1.12  if You sell or transship any MFU, MFU Filters, FiltaCool filters, or any other Equipment, supplies, or materials that You obtain from Filta without Filta's prior written consent;

21.1.13  if any Transfer occurs other than in accordance with the terms of Article 20 of this Agreement;

21.1.14  if You (or, in the case of a partnership, any of Your partners) become insolvent or make an assignment for the benefit of creditors; if execution is levied against the Franchise; or if suit to foreclose any lien or mortgage against the Franchise or Equipment is instituted against and not dismissed within 30 days;

21.1.15  if You or any of the Owners commits any criminal offense (other than a traffic offense not involving a custodial sentence);

21.1.16  if You fail to install Quickbooks, fail to maintain a broadband connection, fail to allow Filta access to Your Information Systems at any prescribed time, or knowingly fail to input into Quickbooks any account or customer being serviced by You;

21.1.17  if You and/or Filta receives persistent customer complaints, verified by Filta, as to the quality of Your services; or

21.1.18  if any customer, government agency, or court determines that You have (a) collected waste cooking oil without the customer's authority; or (b) taken waste oil from a third party's storage container without the consent of the third party.

21.2  For any breach not specified in clause 21.1 or elsewhere in this Agreement, Filta has the right to terminate this Agreement if You fail to cure the breach to Filta's satisfaction within 30 days after receipt of notice of default from Filta.

21.3  Filta will have the right to terminate this Agreement by written notice, effective immediately, if You are a "repeat offender" under clause 21.1 and/or 21.2. You are a "repeat offender" if You are in default again under clause 21.1 or 21.2 after having received 2 or more prior written notices of default from Filta within the previous 18-month period, even if You cured each default. Filta may exercise this right to terminate at any time within 6 months after You are in default for the third time.

21.4  If Filta has reasonable grounds for believing that You have ceased to operate the Franchise without Filta's consent, Filta or its designee may operate the Franchise as Your agent with full powers to bind You and You will be responsible for Filta's costs.

21.5  You may terminate this Agreement at any time without cause, provided that: (i) You are not in default of any of Your obligations to Filta; (ii) You give Filta at least 90 days advance notice of the termination date; (iii) You continue to provide service to customers, conduct demonstrations for potential customers, and fulfill your obligations to Filta in the ordinary course until the termination date; (iv) You cooperate with and assist Filta, as reasonably requested, in transitioning the servicing of the customers to Filta or to a new franchisee; (v) You return the Equipment in good condition; (vi) You pay Filta a termination fee as

determined according to the schedule in Exhibit 2 to this Agreement (the **"Termination Fee"**); (vii) You comply with the obligations in Article 22 below; and (viii) You sign a full release of any claims against Filta and its affiliates, officers, directors, agents, and employees.

## 22   OBLIGATIONS UPON EXPIRATION OR TERMINATION

Immediately upon expiration or termination of this Agreement by either party for any reason or the Transfer of the Franchise to a new owner, unless otherwise explicitly directed by Filta, You must:

22.1   cease to trade under the Proprietary Marks, and cease to use the Proprietary Marks (or any imitation or approximation thereof) on the Vans, Stationery, signs, uniforms or otherwise;

22.2   not make or receive telephone calls in connection with the Franchise, and not hold Yourself out as an operator of the Franchise or as having any connection with Filta or the System;

22.3   deliver to Filta all MFUs in your possession or control. If You return all MFUs within 60 days, Filta will pay You the depreciated value (which we determine using the double declining balance method over a 10 year period) of each returned MFU. If You do not return all MFUs within 60 days, You agree to pay Filta liquidated damages of $20,000 for each MFU that You fail to return. If Filta accepts the return of any other Equipment, Filta will pay You the fair market used equipment value, as determined by Filta in its reasonable judgment. Filta may deduct from any such payments the costs of any refurbishments and repairs and any other amounts You owe Filta;

22.4   within 30 days, return all FiltaCool filters;

22.5   within 5 business days, cancel any fictitious name filing or similar filing and any domain name registration that associates You with Filta, the Franchise or the System. If You fail so to do, Filta is hereby irrevocably appointed Your agent with full authority to give such notice to the appropriate government authorities on Your behalf;

22.6   within 5 business days, deliver to Filta:  (a) full contact details for all customers You have serviced; and (b) the names of all other persons who have inquired about and/or requested the services of the Franchise within the previous 12 months;

22.7   pay all amounts owed to Filta and to the creditors of the Franchise;

22.8   comply with Your ongoing obligations that survive expiration, termination, or transfer of this Agreement, including but not limited to Article 17 (Confidential Information); Article 23 (Restrictions on Competition); Article 24 (Indemnification); and Article 30 (Disputes); and

22.9   execute and deliver any and all documents required by Filta to complete the termination of this Agreement, which may include a release of claims, and to facilitate the transition of the servicing of the customers to Filta or its designee.

## 23     RESTRICTIONS ON COMPETITION

23.1    During the term of this Agreement, You may not, without Filta's prior written consent, own, operate, be employed by, provide financing or other assistance or facilities to, or have any interest in, any business that offers services similar to those provided by the Franchise (a "Competing Business").

23.2    For 2 years following the expiration, termination or non-renewal of this Agreement or the approved transfer of this Agreement by You to a new franchisee, You may not, without Filta's prior written consent, own, operate, be employed by, provide financing or other assistance or facilities to, or have any interest in, any Competing Business that is operating within any Territory formerly assigned to You or within the geographic area defined by an outer boundary line that is measured twenty-five miles outward from the perimeter of any Territory formerly assigned to You. You agree that this restriction will not keep You from earning a livelihood, and You acknowledge that its purpose is to protect the goodwill of Filta and its other franchisees.

23.3    For 2 years following the expiration, termination, or non-renewal of this Agreement or the approved transfer of this Agreement by You to a new franchisee, You may not have any contact with any customers to which You provided services within the 1-year period before expiration, termination, non-renewal, or transfer for the purpose of soliciting such customers for any Competing Business at any location.

23.4    The running of the time periods in clause 23.2 and  23.3 will be suspended during any period in which You are not in compliance with those sections. In addition, if a court proceeding results in enforcement of clause 23.2 or 23.3, any portion of the time periods in those sections that has not yet run will run from the date of the court order or settlement permitting enforcement.

23.5    You may not attempt to circumvent the restrictions in clause 23.1, 23.2 or 23.3 by engaging in prohibited activity indirectly through any other person or entity.

23.6    The Owners acknowledge that, by signing this Agreement or a separate Personal Guarantee, they are binding themselves personally to all of the terms of this Agreement, including this Article 23. You must obtain from your officers, directors, and employees, as Filta may designate, executed non-competition and confidentiality agreements similar in substance to this Article 23. The agreements must be in a form acceptable to Filta and specifically identify Filta as a third party beneficiary with the independent right to enforce the agreement.

23.7    If any provision of clause 23.1 to 23.3 is deemed by a court to be overbroad or unenforceable as written, the parties intend that the court reform the provision to make it enforceable, and You agree to comply with the clause as so reformed. You agree that the existence of any claim You may have against us, whether or not arising from this Agreement, is not a defense to Filta's enforcement of Article 23.

## 24     INDEMNITY

You agree to hold harmless and indemnify us and our past, present and future affiliates, officers, directors, shareholders, and employees against any claims, losses, costs, expenses, liabilities and damages (collectively, **"Claims"**) arising directly or indirectly from, as a result of, or in connection with the Franchise, as well as the costs of defending against such Claims (including, but not limited to, reasonable attorneys' fees, costs of investigation, settlement costs, and interest), except for Claims that arise due to the negligence of Filta or those for whom Filta is responsible in law. If You do not respond in a timely and appropriate manner to any threatened or actual litigation, proceeding, or dispute which could directly or indirectly affect any of the persons indemnified under this section (collectively, the **"Indemnitees"**), the Indemnitees will have the right, but no obligation, to: (i) choose counsel; (ii) direct and control the handling of the matter; and (iii) settle any claims against the Indemnitees. If You are co-defendant with Filta or any other Indemnitee in a lawsuit, each defendant may retain its own counsel to represent its interests based on their respective contracts of insurance. You and Filta agree to co-operate in a joint defense to deal with the matter unless a conflict arises due to and based on the facts of the case.

## 25     ACKNOWLEDGMENTS

25.1    You hereby acknowledge:

25.1.1    the exclusive rights of Filta to the System.

25.1.2    that in giving advice to You, assisting You to establish the Franchise, and assessing Your suitability, Filta does not give any guarantee or warranty with regard to the financial performance of the Franchise.

25.1.3    that You have been advised by Filta to seek independent advice, including legal advice, and that the decision to enter into this Agreement has been taken on the basis of Your personal judgment and experience, having taken such independent advice.

25.1.4    that You are not relying on any representation, warranty, inducement or promise, express or implied, by Filta other than the documents referred to in Article 32.

25.1.5    that You are not entering into this Agreement in whole or in part because of any potential add-on business concepts that Filta may or may not introduce in the future.

25.1.6    that in order to run a successful Filta franchise, You must be willing to operate during night, weekend and holiday hours.

25.2    It is hereby expressly agreed between the parties that each of the restrictions contained in this Agreement is reasonably necessary for the protection of Filta and its other franchisees, the System, and the Proprietary Marks, and does not unreasonably interfere with Your freedom of action. You enter into this Agreement with the benefit of legal advice in full knowledge of all the provisions hereof and You acknowledge that all such provisions are fair and reasonable.

25.3   You warrant that prior to the execution of this Agreement or any similar agreement with Filta, You had no knowledge of Filta's System or Confidential Information.

## 26    RESERVATION OF RIGHTS

All rights not specifically and expressly granted to You by this Agreement are for all purposes reserved to Filta.

## 27    NO AGENCY

Nothing in this Agreement shall be construed as making You and Filta partners or joint venturers or shall make either party liable for any of the debts or obligations of the other. You have no power to contract on behalf of Filta. You are an independent contractor and must not hold yourself out or give the impression that You are acting as an agent or representative of Filta in any dealings which You may have with any third party. You must place upon all Stationery, letter headings, business cards, autosignatures, and other documents and literature used in connection with the Franchise, in such manner and place as Filta may direct, the following words (or such other words to similar effect as may from time to time be specified by Filta): "a Filta Franchise owned and operated under License by" followed by Your name.

## 28    NO IMPLIED WAIVERS

No delay or failure to exercise any right under this Agreement (or any similar agreement with another franchisee) or to insist upon your strict compliance with any obligation or condition, and no custom or practice that differs from the terms of this Agreement (or any similar agreement with another franchisee), will constitute a waiver of Filta's right to exercise the contract provision or to demand Your strict compliance with the terms of this Agreement. Our waiver of a particular default or condition does not affect or impair our rights with respect to any subsequent default or condition. Our waiver of a default by another franchisee does not affect or impair our right to demand Your strict compliance with the terms of this Agreement. Our acceptance of any payments due from You does not waive any prior defaults unrelated to the payment.

## 29    SURVIVAL

The expiration or termination of this Agreement (for any reason) does not terminate any provision hereof which is expressly or by implication provided to come into or continue in force after such expiration or termination.

## 30    DISPUTES

30.1   **Governing Law**

This Agreement is governed in all respects in accordance with the law of the State of Florida, without regard to the application of Florida conflict of law rules.

30.2    **Venue**

You and the Owners must file any suit against Filta, and we may file any suit against You and/or the Owners, in the federal or state court where Filta's principal office is located at the time the suit is filed. The parties waive all questions of personal jurisdiction and venue for the purpose of carrying out this provision.

30.3    **Time Limit on Filing**

Any claim or action arising out of or relating to this Agreement or the relationship between Filta and You and the Owners must be commenced within one (1) year from the occurrence of the facts giving rise to the claim or action, or the claim or action is barred.

30.4    **Class Action Waiver**

TO THE EXTENT PERMITTED BY LAW, YOU AND THE OWNERS WAIVE THE RIGHT TO SEEK CERTIFICATION OF A CLASS IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM AGAINST FILTA.

30.5    **Waiver of Jury Trial**

Filta, You, and the Owners irrevocably waive trial by jury in any action, proceeding, or counterclaim among them.

# 31    MODIFICATION OF AGREEMENT

No variation, modification or alteration of any of the terms of this Agreement is of any effect unless evidenced in writing signed by a duly authorized representative of You and Filta.

# 32    ENTIRE AGREEMENT

This Agreement and the documents referred to herein constitute the entire agreement between You and Filta and supersede all prior agreements, correspondence, negotiations, and representations in connection with the subject matter hereof, except for the information presented to You in Filta's Franchise Disclosure Document. No director, employee or agent of Filta is authorized to make any representation or warranty not contained in this Agreement and You acknowledge that You have not relied on any such oral or written representations or statements about the Franchise, the prospects for success, financial performance, or any other matter unless such representations or statements are annexed to this Agreement and signed by the parties. Nothing in this Agreement or any related documents is intended to disclaim or disavow any representations made in the FDD that You received.

# 33    NOTICE

Any notice given to any party in connection with this Agreement must be in writing and must be sent by first class mail, by reputable overnight commercial delivery service, or by facsimile (if the sender receives machine confirmation of successful transmission) to the address set out at the top

34

of this Agreement or to such changed address as must for that purpose be notified to the other party. Every such notice must be deemed to have been given at the time when in the course of ordinary transmission it should have been delivered at the address to which it was sent.

## 34    EXPENSES

You agree to reimburse us for all expenses we reasonably incur (including reasonable attorneys' fees): (a) to enforce the terms of this Agreement or any obligation owed to us by You and/or the Owners; and (b) in the defense of any claim You and/or the Owners assert against us on which we substantially prevail in court, arbitration, or other formal legal proceedings. Except as stated in the foregoing sentence or as expressly provided otherwise in this Agreement, the parties will each bear their own legal and accountancy costs and other expenses incurred in connection with this Agreement.

THIS FRANCHISE AGREEMENT IMPOSES IMPORTANT LEGAL OBLIGATIONS ON YOU. WE THEREFORE STRONGLY ADVISE YOU TO OBTAIN COMPETENT, INDEPENDENT LEGAL AND BUSINESS COUNSEL BEFORE ENTERING INTO THIS FRANCHISE AGREEMENT. We believe that fully understanding your obligations before entering into the agreement is the best way to avoid conflicts. We look forward to a mutual, beneficial relationship.

You represent that the person signing this Agreement on your behalf has full authority to do so.

PLEASE SIGN BELOW.

**THE FILTA GROUP INC.**                    **MMG ENTERPRISE, LLC**

*Tom Dunn*                                  *Patrick m Garry*
Tom Dunn (Apr 12, 2016)                     Patrick m Garry (Apr 6, 2016)


By: Tom Dunn                                By:  Patrick Michael Garry

Title: COO                                  Title: Owner

**THE SCHEDULE**

**Equipment**:

| QUANTITY | ITEM & DESCRIPTION |
| --- | --- |
| 1 | FiltaFry Mobile Filtration Unit |
| 1 | Fire proof disposal can |
| 1 | Fire Extinguisher |
| 1 | Stainless steel bucket |
| 1 | Scraper |
| 1 pair | Safety  gloves |
| 1 pair | Heavy duty gloves |
| 1 pair | Safety glasses |
| 5 rolls | Shop towels |
| 2 | Pack of screen cleaners |
| 1 | Stainless steel poker/hook |
| 1 | Accessories holder |
| 1 | Stainless steel ladle |
| 2 | Glass sampling jars |
| 2 | Hand spray |
| 1 | Electronic thermometer |
| 1 | Adapted industrial wet/dry vacuum cleaner with hoses and attachments |
| 1 | Adapted industrial wet dry vacuum cleaner |
| 1 | "Wet Floor" warning sign |
| 1 | Oil spill kit |
| 1 | Tool kit |

2

| | |
|---|---|
| 40 | Industrial scouring pads |
| 1 | Light box |
| 1 | Burns first aid kit |
| 1 | FiltaCool De-gassing unit which includes (1) shelf, (1) cabinet, (1) thermostat/timer assembly, (1) heater |
| 1 | Intuit Quickbooks Pro for Windows software package |
| 1 | Web connector |
| 1 | FiltaBio Van Storage Tank, including installation |
| 1 | FiltaBio transfer pump |
| 1 | Plumped fittings for transfer pump and process |
| 1 | Oil transfer hose (30ft) |
| 1 | Oil Disposal Caddy |
| 1 | Oil Disposal Caddy Sleeve Fitting |

**Stationery**:

| QUANTITY | ITEM & DESCRIPTION |
|---|---|
| 1 | Start-up Pack – envelopes (500) and business cards (500) |

**Uniforms**:

| QUANTITY | ITEM & DESCRIPTION |
|---|---|
| 2 | Filta business dress or camp style shirts |
| 1 | Filta jacket |
| 1 | Filta sweatshirt |
| 2 | Filta polo style shirts |
| 5 | Work Pants |
| 5 | Filta – Tech shirts |

| 2 | Aprons |
|---|---|
| 1 pair | Non-slip boots |
| 2 | Filta baseball caps |

**Marketing Materials**:

| QUANTITY | ITEM & DESCRIPTION |
|---|---|
| 25 | Fryer Management Posters |
| 100 | Filta Services Brochures |

**Vehicle Preparation**:

| |
|---|
| Van Decal |
| Ramp and Locking Mechanism |
| Geo-location Device (1st Van only – see clause 8.15) |

**Stock**:

| QUANTITY | ITEM & DESCRIPTION |
|---|---|
| 20 | FiltaFry filters |
| 5 gallons | FiltaClean 100 cleaning fluid |
| 5 | Filta marker pens |
| 20 | Filta pens |
| 21 | FiltaCool Filters with 7 holders |

**The Location of the Premises:**
16117 Montague Drive
Edmond, OK 73013

**The Territory:**
OK-02, OK-03



**PERSONAL GUARANTEE**

As an inducement to THE FILTA GROUP INC. ("Filta") to execute a Franchise Agreement (the "Agreement") with MMG ENTERPRISE, LLC ("Franchisee"), a limited liability corporation, organized under the laws of Oklahoma, the undersigned individuals (collectively, the "Guarantors"), jointly and severally, hereby unconditionally and personally guarantee to Filta, its affiliates, and their successors and assigns that all of Franchisee's obligations under the Agreement and under other agreements or arrangements between Franchisee and Filta, its affiliates, and their successors or assigns will be punctually paid and performed.

1.     <u>Guaranty</u>

Upon demand by Filta, the Guarantors will immediately make each contribution or payment required of Franchisee under the Agreement, and under other agreements or arrangements between Franchisee and Filta, its affiliates, or their successors or assigns. Each Guarantor waives any right to require Filta to: (a) proceed against Franchisee or any other Guarantor for any contribution or payment required under the Agreement; (b) proceed against or exhaust any security from Franchisee or any other Guarantor; or (c) pursue or exhaust any remedy, including any legal or equitable relief, against Franchisee or any other Guarantor. Without affecting the obligations of the Guarantors under this Guarantee, Filta may, without notice to the Guarantors, extend, modify, or release any indebtedness or obligation of Franchisee, or settle, adjust, or compromise any claims against Franchisee. The Guarantors waive notice of amendment of the Agreement and notice of demand for contribution or payment by Franchisee and agree to be bound by any and all such amendments and changes to the Agreement.

2.     <u>Indemnity</u>

The Guarantors agree to hold harmless and indemnify Filta against any and all losses, damages, liabilities, costs, and expenses (including reasonable attorneys' fees, reasonable costs of investigation, court costs, and arbitration fees and expenses) resulting from, consisting of, or arising out of or in connection with any failure by Franchisee to perform any obligation of Franchisee under the Agreement or any other agreement between Franchisee and Filta or its affiliates.

3.     <u>Other Personal Obligations</u>

The Guarantors acknowledge that they are bound personally by all covenants not to compete, confidentiality provisions, governing law and dispute resolution provisions, and restrictions on transfer of interest contained in the Agreement.

Except as expressly authorized by the Agreement, the Guarantors shall not make use of any of the intellectual property rights licensed under the Agreement or the goodwill of Filta and its affiliates, and shall not disclose to any third party or make use of any trade secrets, know-how, systems or methods of which Guarantors may acquire knowledge by virtue of the training they may have received from Filta, their involvement in the business, or their ownership interest in Franchisee.

6

4.    <u>Duration</u>

This Guarantee will terminate upon the termination or expiration of the Agreement, except that (a) all obligations and liabilities of the Guarantors which arose from events which occurred on or before the expiration or termination of the Agreement shall remain in full force and effect until satisfied or discharged by the Guarantors; and (b) all personal obligations under Section 3 which by their terms continue in force after the expiration or termination of the Agreement shall remain in force according to their terms.

Upon the death of a Guarantor, the heirs and estate of the Guarantor will not be bound by this Guarantee or liable for any outstanding obligations of the Guarantor hereunder. However, the obligations of the surviving Guarantors will continue in full force and effect.

PERSONAL GUARANTOR/S:

By  _Patrick m Garry_
Patrick m Garry (Apr 6, 2016)

Patrick Michael Garry

**EXHIBIT 1**
**CONTINGENT ASSIGNMENT OF TELEPHONE NUMBERS**

For value received, the undersigned (**"Assignor"**) assigns, transfers and sets over to THE FILTA GROUP, INC. (**"Franchisor"**) all of Assignor's right and title to and interest in and to those certain telephone numbers and regular, classified, or other telephone directory listings (collectively, the **"Telephone Numbers and Listings"**) associated with the FILTA ENVIRONMENTAL KITCHEN SOLUTIONS® business operated by Assignor under its Franchise Agreement with Franchisor.

This assignment agreement (the **"Assignment"**) is for collateral purposes only and, except as specified herein, Franchisor will have no liability or obligation of any kind whatsoever arising from or in connection with this Assignment unless Franchisor notifies the telephone company and all listing agencies (collectively, **"Telephone Company"**) to effectuate the Assignment.

Upon termination or expiration of the Franchise Agreement (without renewal or extension), Franchisor will have the right and is hereby empowered to effectuate the assignment of the Telephone Numbers and Listings. In such event, Assignor will have no further right, title, or interest in the Telephone Numbers and Listings. Notwithstanding the foregoing, Assignor will remain liable to the Telephone Company for all current and past due fees owed to the Telephone Company on or before the effective date of the Assignment.

Assignor acknowledges and agrees that upon termination or expiration of the Franchise Agreement (without renewal or extension), Franchisor will have the sole right to and interest in the Telephone Numbers and Listings, and Assignor appoints Franchisor as Assignor's true and lawful attorney-in-fact to direct the Telephone Company to assign the Telephone Numbers and Listings to Franchisor, and to execute such documents and take such actions as may be necessary to effectuate the Assignment. Upon the termination or expiration of the Franchise Agreement, Assignor will immediately notify the Telephone Company to assign the Telephone Numbers and Listings to Franchisor. Assignor also agrees not to utilize a call forwarding message referring to another number. If Assignor fails to promptly direct the Telephone Company to assign the Telephone Numbers and Listings to Franchisor, Franchisor will direct the Telephone Company to effectuate the assignment contemplated hereunder to Franchisor.

The parties agree that the Telephone Company may accept this Assignment as conclusive proof of Franchisor's exclusive rights in and to the Telephone Numbers and Listings upon the termination or expiration of the Franchise Agreement. If the Telephone Company requires that the parties execute the Telephone Company's assignment forms or other documentation at the time of termination or expiration, Franchisor's execution of such forms or documentation will effectuate Assignor's consent and agreement to the Assignment. The parties agree to perform such acts and execute and deliver such documents as may be necessary to assist in or accomplish the Assignment upon termination or expiration of the Franchise Agreement.

**THE FILTA GROUP, INC.**                    **MMG ENTERPRISE, LLC**

By: Tom Dunn                                By:  Patrick Michael Garry

_Tom Dunn_                                  _Patrick m Garry_
Tom Dunn (Apr 12, 2016)                     Patrick m Garry (Apr 6, 2016)

1

**EXHIBIT 2**
**TERMINATION FEE SCHEDULE**

| If You elect to terminate the Franchise in the following year of Your then-current Term: | The Termination Fee will be: |
|---|---|
| Year 1 | The Service Fee multiplied by 25% of the number of Months remaining in the Term |
| Year 2 | The Service Fee multiplied by 30% of the number of Months remaining in the Term |
| Year 3 | The Service Fee multiplied by 35% of the number of Months remaining in the Term |
| Year 4 | The Service Fee multiplied by 40% of the number of Months remaining in the Term |
| Year 5 | The Service Fee multiplied by 45% of the number of Months remaining in the Term |
| Year 6 | The Service Fee multiplied by 50% of the number of Months remaining in the Term |
| Year 7 | The Service Fee multiplied by 55% of the number of Months remaining in the Term |
| Year 8 | The Service Fee multiplied by 60% of the number of Months remaining in the Term |
| Year 9 | The Service Fee multiplied by 65% of the number of Months remaining in the Term |
| Year 10 | Zero |

### <u>RENEWAL ADDENDUM TO FILTA ENVIRONMENTAL KITCHEN SOLUTIONS FRANCHISE AGREEMENT</u>

This Renewal Addendum (the "Addendum") to the Filta Environmental Kitchen Solutions Franchise Agreement is made effective beginning April 4, 2016, between THE FILTA GROUP, INC., a Delaware corporation ("Filta"), and MMG ENTERPRISE, LLC, a limited liability corporation ("You" or "Your").

### <u>Background</u>

You and Filta originally entered into a Filta Environmental Kitchen Solutions Franchise Agreement dated October 14, 2010.

On the same date as this Addendum, You are renewing Your franchise relationship with Filta by executing the Filta Environmental Kitchen Solutions Franchise Agreement between Filta and You dated April 4, 2016 (the "Franchise Agreement").

This Addendum amends and supplements the Franchise Agreement. Capitalized terms used but not defined in this Addendum have the same meaning as in the Franchise Agreement.

### <u>Amendments</u>

1. The following amendments are made to the Franchise Agreement:

   a. The definition of "Advertising/Promotions Levy" is deleted and replaced with: the term "Advertising/Promotions Levy" means $135 per month. Filta has the right to adjust the Advertising/Promotions Levy once per calendar year, on or before December 31, by the amount of the Annual Adjustment.

   b. The definition of "Equipment Package" is deleted and replaced with: The term "Equipment Package" means the items of equipment set out in the Schedule attached to Your Filta Environmental Kitchen Solutions Franchise Agreement dated October 14, 2010.

   c. The definition of "Schedule" is deleted and replaced with: The term "Schedule" means the Schedule and map of the Territory attached to Your Filta Environmental Kitchen Solutions Franchise Agreement dated October 14, 2010, which are incorporated herein by reference.

   d. The definition of "Service Fee" is deleted and replaced with: The term "Service Fee" means $565 per Month times the number of MFUs that You have in operation, the number of Vans that You have in operation, or the number of Territories in which You operate, whichever is the greatest number of the three. Filta has the right to adjust the Service

Fee once per calendar year, on or before December 31, by the amount of the Annual Adjustment.

e.  Section 4.1 is deleted and stricken in its entirety.

f.  The phrase "Starting in the 4th Month following the Opening Date," in section 4.2 is deleted and stricken.

g.  Section 5.1 is deleted and stricken in its entirety.

h.  The first sentence of section 5.2 is deleted and replaced with:  "At Your own expense for use in the Franchise, You must obtain a Ford E-250 or Chevrolet Express 250 Van meeting Filta's specifications."

i.  Section 5.4 is deleted and stricken in its entirety.

j.  Section 6.1 is deleted and replaced with: "Filta has the right to require that any employee You hire, who will have access to the MFU, attend training approved by Filta.  You must notify Filta each time You hire an employee, who will have access to the MFU.  You must bear all expenses associated with such training in accordance with section 6.3."

k.  Sections 7.1, 7.2, 7.3, 8.13 are deleted and stricken in their entirety.

2.  <u>General Release</u>.  In consideration of Filta's renewing the Franchise agreement, You, on behalf of Yourself and Your members, officers, directors, shareholders, employees, partners, contractors, heirs, successors and assigns, do hereby release, cancel, acquit, forgive and forever discharge Filta and each of its predecessors, parent corporations, holding companies, subsidiaries, affiliates, divisions, heirs, successors and assigns, and all of their officers, directors, shareholders and employees from any and all actions, claims, suits, agreements, demands, damages, obligations, liabilities, judgments, controversies, executions and proceedings both at law and in equity of any kind or nature whatsoever, from the beginning of the world through the date You sign this Addendum, whether known or unknown, fixed or contingent.

Except as modified herein, the terms of the Franchise Agreement remain in full force and effect.

## (Signatures appear on the following page)

**IN WITNESS WHEREOF**, the parties have executed this Addendum by their duly authorized representatives.

**THE FILTA GROUP, INC.**                    **MMG ENTERPRISE, LLC**

_Tom Dunn_
<small>Tom Dunn (Apr 12, 2016)</small>
_____

By:     Thomas Dunn

Title:  COO

_Patrick m Garry_
<small>Patrick m Garry (Apr 6, 2016)</small>
_____

By:     Patrick Michael Garry

Title:  Owner

## FILTABIO ADDENDUM TO THE
## FILTA ENVIRONMENTAL KITCHEN SOLUTIONS FRANCHISE AGREEMENT

This FiltaBio Addendum (the "Addendum") is entered into by THE FILTA GROUP, INC., a Delaware corporation ("Filta"), and MMG ENTERPRISE, LLC ("Franchisee" "You" or "Your"), on the date signed by Filta (the "Effective Date").

### Background:

A.     This Addendum amends and supplements the Filta Environmental Kitchen Solutions Franchise Agreement dated April 4, 2016, between You and Filta (the "Franchise Agreement").

B.     Capitalized terms used but not defined in this Addendum have the same meaning as in the Franchise Agreement.

### Agreement:

1.     Purpose of Addendum.

To facilitate development of the business of collecting, storing, and selling waste cooking oil ("WVO") as a service under the Franchise Agreement (the "FiltaBio Service"); and

To give You a sales outlet for the WVO and provide for the aggregation of WVO from You and other Filta franchisees in order to a) leverage pricing of the WVO, and b) improve opportunities for consistent sales of the WVO.

2.     Term

This Addendum will expire automatically on the date of termination, expiration, or non-renewal of the Franchise Agreement.

3.     Designated Collector

Filta may enter into an agreement with a third party that will collect all WVO in Your possession, pursuant to the terms of this Addendum (the "Designated Collector"). If Filta has entered into an agreement with a Designated Collector, the contact information for the Designated Collector is included on the attached Schedule "A." If Filta changes Designated Collectors, Filta will notify You in writing. The Procedure (section 4 of this Addendum) may be subject to change dependent upon a change in the Designated Collector.

4.     Procedure

a.     You agree to sell all WVO to Filta during the term of this Addendum, subject to the terms and conditions stated below except as otherwise agreed in writing with Filta.

b.     You agree to collect, process and store all WVO from customers serviced by Your franchise and to telephone Filta at least once per week to report to Filta the volume, in gallons, of the WVO in Your possession. In reporting Your volume of WVO, You represent that You have the lawful right to all WVO that You have collected and that it has not been collected from bins outside the back of customer locations.

c.      When Filta determines that the aggregate volume of all area franchisees' WVO reaches the capacity of an available truck, Filta will arrange to have the WVO collected. Your WVO may be combined with the WVO collected from other area franchisees to form a truckload. Filta or the Designated Collector will provide You with 48 hours' notice of the collection date.

d.      In presenting the WVO for collection, You represent that the oil has less than 10% FFA and less than 3% MIU content (the "Quality Level"). You agree to send Filta samples of WVO from totes when requested prior to collection. In order to protect all parties and ensure quality, Filta or the Designated Collector may conduct tests before and after collection to determine whether the WVO meets the Quality Level. If WVO does not meet the Quality Level before collection, then Filta will advise You on methods to bring the WVO up to the Quality Level.

e.      A collection receipt will be left onsite showing the date, time and volume of WVO collected at the time of collection. Within 48 hours of collection You will be notified by email of the rate to be paid for the WVO per the attached Schedule "B." If You have any objections to the rate or volume, You must send Filta an email within 24 hours of receipt of this notification describing the objection.

f.      You acknowledge that if any truckload of WVO does not meet the Quality Level, the end purchaser may reduce the price it will pay for the WVO. In such a case, Filta or the Designated Collector will test all samples taken at collection from the franchisees who contributed WVO to the affected truckload. The franchisee(s) who provided the WVO not meeting the Quality Level will receive reduced payment for the WVO.

g.      Subject to the paragraphs above, Filta will pay You for the WVO collected within fourteen days of the date purchased by the end buyer. Filta will pay You at the rate notified under Paragraph 4(e) above, unless reduced under Paragraph 4(f).

5.      <u>Treatment of Proceeds</u>

Your receipts from the sale of WVO will constitute Gross Monthly Revenue under the Franchise Agreement and will be included in any calculation of Business Volume thereunder.

6.      <u>Authorization to Enter Franchisee's Property</u>

If you elect to rent a storage unit, garage or warehouse facility to store waste oil and/or supplies, the facility must meet Filta's standards for accessibility to the facility by Filta or the Designated Collector. You agree to set up your WVO storage area in such a way that Filta or the Designated Collector has free access to it, including all necessary entry codes or keys. Franchisee grants Filta and the Designated Collector and all their employees, contractors and subcontractors the right and license to enter upon Franchisee's property to access the WVO storage area.

7.      <u>Franchisee's Rights in Case of Nonpayment</u>

If Filta does not pay You for the WVO within 30 days of the date it is purchased by the end buyer, You must send written notice of nonpayment to Filta's Orlando office (Fax (407) 996-5551). Filta will have 10 business days from receipt of Your notice to deliver payment to You. If Filta does not deliver payment within this 10 business day period, You will have the right, on 30 days' written notice, to terminate Your obligation to sell WVO through the procedure in this Addendum. You may thereafter continue to collect, store, and sell waste oil under the FiltaBio name and mark, subject to the terms of the Franchise Agreement and the remaining terms of this Addendum.

8.    <u>Filta's Right to Suspend Program</u>

If the market price of WVO should decline to the extent that Filta determines that performing under this Addendum is no longer economically or commercially feasible, Filta may suspend the parties' rights and obligations hereunder indefinitely by delivering written notice to Your place of business at least 10 business days before the suspension takes effect. During any period of suspension, You may continue to collect, store, and sell waste oil under the FiltaBio name and mark, subject to the terms of the Franchise Agreement and the remaining terms of this Addendum. If the market price of WVO recovers to the extent that Filta determines that resuming performance under this Addendum is economically or commercially feasible, Filta may reinstitute the parties' rights and obligations hereunder by delivering written notice to Your place of business at least 10 business days before the suspension ends.

9.    <u>Confidentiality</u>

You agree not to disclose any information about the terms of this Addendum, including the Schedules, to any person or entity who is not a party to this Addendum. Such information will be subject to all confidentiality obligations of Franchisee and its Owners, officers and managers under the Franchise Agreement and all related agreements with Filta.

10.    <u>Entire Agreement; Modification</u>.

This Addendum is the final agreement between the parties on this matter and all prior discussions or representations about the Addendum are superseded and replaced by this Addendum. This Addendum may not be modified except by a writing signed by all parties.

11.    <u>Effect of Addendum</u>.

Except as expressly modified by this Addendum, the terms of the Franchise Agreement, as amended, remain in full force and effect and are ratified and confirmed.

**[Signature page follows]**

**For your convenience, this document is set up for execution by e-signature through EchoSign. Acceptance is indicated by e-signature. Simply follow the instructions in the EchoSign e-mail to e-sign this document. A fully executed copy will then be e-mailed to you.**

**MMG ENTERPRISE, LLC**                    **THE FILTA GROUP, INC**

*Patrick m Garry*                          *Tom Dunn*
Patrick m Garry (Apr 6, 2016)              Tom Dunn (Apr 12, 2016)

Name:  Patrick Michael Garry              By: Thomas Dunn

Title: Owner                               Title: COO

**Schedule A**

The **Designated Collector** under this Addendum is:

ENHANCED RECYCLERS, INC.

**Schedule B**

The Rate Paid per gallon to Franchisee is based upon the Monthly Volume of WVO collected and the Jacobsen Rate at the time of collection. The higher the Monthly Volume, the higher the percentage of Jacobsen paid.

If oil is being collected by ENHANCED RECYCLERS, INC., the schedule below will apply:

| Monthly Volume (gallons) | Rate Paid % Jacobsen |
|---|---|
| 0-1,000 | 60% |
| 1,001-1,500 | 60% |
| 1,501-2,000 | 60% |
| 2,001-2,500 | 60% |
| Over 2,500 | 60% |

If oil is being collected by anyone other than ENHANCED RECYCLERS, INC., the schedule below will apply:

| Monthly Volume (gallons) | Rate Paid % Jacobsen |
|---|---|
| 0-1,000 | 45% |
| 1,001-1,500 | 50% |
| 1,501-2,000 | 55% |
| 2,001-2,500 | 60% |
| Over 2,500 | 65% |

**Descriptions and Examples**

**Jacobsen Rate**

This Jacobsen Rate is an industry standard for pricing WVO and is published daily on Symphony or can be found at www.thejacobsen.com

Jacobsen works on regions. You are in the region defined by Jacobsen as:    **"Missouri River"**

The Jacobsen rate is defined in cents per pound. This amount is multiplied by 7.5 to give the price per gallon.

**Monthly Volume**

*Note: As the project grows, there may be many collections per month from Franchisee, and each collection may be of relatively low volume (for example 400 gal per week). The fairest way to work the pricing is to determine how much WVO Franchisee collects in a 30 day period and pay the rate accordingly. This is the "Monthly Volume."*

The calculation to determine the Monthly Volume is:

**Volume collected divided by the number of days since last collection multiplied by 30.**

Example 1: if 1,500 gallons is collected and it has been 35 days since the last collection:
Monthly Volume = 1500 / 35 x 30 = 1,286

Example 2: if 750 gallons is collected and it has been 15 days since the last collection:
Monthly Volume = 750 / 15 x 30 = 1,500

# Exhibit B

## CONFIDENTIAL SEPARATION AGREEMENT

This Confidential Separation Agreement (the "Agreement") is made effective as of May 15, 2022 (the "Effective Date") by and between:

(i)     **PATRICK MICHAEL GARRY,**  an individual  ("You or "Your") and

(ii)    **MMG ENTERPRISE, LLC**. an Oklahoma corporation ("You or "Your") and

(iii)   **THE FILTA GROUP, INC.**, a Delaware corporation ("Filta").

A.      On or about April 4, 2016, You and Filta entered into a Filta Environmental Kitchen Solutions Franchise Agreement, as amended from time to time, (the "Franchise Agreement"), for the operation of a Filta Franchise business providing on-site fryer management services including microfiltration of cooking oil, fryer cleaning, and the collection and sale of waste cooking oil (the "Filta business") in Filta Territory OK-02 and OK-03 (the "Territory") as shown on the map attached to the Franchise Agreement as amended.

B.      You have made written notice of Your intent to terminate the Franchise Agreement prior to its expiration, therefore the parties wish to end their business relationship and settle all disputes and differences between them under the terms and conditions set forth below.

C.      Capitalized terms used but not defined in this Agreement have the same meaning as in the Franchise Agreement.

**NOW THEREFORE** in consideration of the recitals, which are incorporated herein by reference, the mutual covenants hereinafter set forth, and for one ($1.00) dollar and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

1.      <u>Termination of Agreements</u>. The Franchise Agreement, as amended, and all other agreements that You may have with Filta, will terminate on May 15, 2022 (the "Expiration Date") and thereafter are of no force or effect, except as provided elsewhere in this Agreement.  As of the Effective Date, You relinquish all right, title, and interest in the Territory, which reverts back to the possession and ownership of Filta.

2.      <u>Your Post-Expiration Obligations</u>  Beginning on May 15, 2022 You will follow the Post Termination Obligations, more fully defined in Sections 21 and 22 of Your Franchise Agreement, including but not limited to: returning the MFUs and other requested equipment to Filta at your expense, deidentifying the vehicles and business and following the Restrictions on Competition. You further agree that after the equipment items are returned to Filta, You will never purchase, lease, use or otherwise obtain possession of any Filta MFU, MFU filters, or any other Filta Environmental Kitchen Solutions, FiltaFry, FiltaCool, FiltaBio, or other Filta brand products, whether from another Filta franchisee or otherwise.

You agree to completely dismantle all of the waste oil collection equipment so that it may not be used to store WVO, and to dispose of or store the equipment in a safe place that is not accessible by members of the public.

Along with the MFU, You have agreed to return an unused Filta cart and Filta has agreed to pay for the cost of shipping.

3.    <u>Early Termination</u> –Filta has agreed to waive any early termination penalties due from You.

4.    <u>Confidentiality</u>.

For a period of five years from the Effective Date, Neither Filta, on the one hand, nor You on the other, shall disclose Confidential Information (as defined below) to any person or entity who is not a party to this Agreement, or use Confidential Information other than as contemplated by this Agreement. As used in this section, "Confidential Information" means: (i) the terms of this Agreement; and (ii) any information regarding the other's business which Filta, on the one hand, and You on the other, have obtained or learned by virtue of the negotiation, preparation, or performance of the Agreement or the Franchise Agreement, attendance at Filta's Discovery Day, attendance at Filta's training program and performance of Filta's sales support obligations, or any other business contacts between the parties. Filta or You may disclose Confidential Information to their respective employees and attorneys solely on a need-to-know basis for the purpose of carrying out and/or enforcing this Agreement, provided that each person to whom Confidential Information is disclosed is informed and agrees that the disclosure is subject to the commitment of confidentiality in this section.

5.    <u>Disclosure of Confidential Information Pursuant to Subpoena</u>.

If You ever receive a notice, subpoena or other written request to produce documents or to attend a deposition that could reasonably lead to disclosure of the Confidential Information, then within two business days of your receipt thereof, You shall give counsel for Filta written notice (via both facsimile and email) of the request or subpoena and forward a copy of the request or subpoena. No Confidential Information shall be produced until Filta has received a copy of the request or subpoena and had a reasonable opportunity to file an appropriate motion for relief. If Filta makes a motion or other application for relief from the subpoena or other request in the appropriate forum, the party who received such notice, subpoena or request shall not produce or disclose the Confidential Information without the consent of Filta or until ordered to do so by a court of competent jurisdiction. Notice as described in this paragraph shall be sent to:

The Filta Group, Inc.
7075 Kingspointe Pkwy, Suite 1
Orlando, FL 32819
Ph: 407-996-5550
Fax: 407-996-555

6.    <u>Non-Disparagement</u>. Filta agrees not to make any oral or written statements, including statements on the internet, or authorize or solicit others to make such statements to third parties that Filta knows or should know are likely to harm Your reputation. You agree not to make any oral or written statements, including statements on the internet, or to authorize or solicit others to make such statements, to third parties that You know or should know are likely to harm the reputation of Filta, the FiltaFry, FiltaCool, FiltaBio or Filta Environmental Kitchen Solutions brands and concepts, or any other FiltaFry or Filta Environmental Kitchen Solutions franchise.

7.    <u>General Release</u>.    You, on behalf of Yourself, and Your members, officers, directors, shareholders, employees, partners, contractors, heirs, successors and assigns, on behalf of themselves and their employees, partners, contractors, heirs, successors and assigns, do hereby release, cancel, acquit, forgive and forever discharge Filta and each of its predecessors, parent corporations, holding companies, subsidiaries, affiliates, divisions, heirs, successors and assigns, and all of their officers, directors, shareholders and employees from any and all actions, claims, suits, agreements, demands, damages, obligations, liabilities, judgments, controversies, executions and proceedings both at law and in equity of any kind or nature whatsoever, from the beginning of the world through the date You sign this Agreement, whether known or unknown, fixed or contingent.

8.    <u>Choice of Law; Entire Agreement; Modification; Attorney's Fees.</u>    To the extent your State Law allows - all issues related to the interpretation and enforcement of this Agreement are controlled exclusively by the application of Florida law.  This Agreement is intended to be the entire agreement between the parties on this matter and all prior and collateral agreements or representations, written or oral, regarding the terms and conditions of the Agreement are superseded and replaced by this Agreement.  This Agreement may not be modified, assigned or transferred except by a writing signed by all parties hereto.  This Agreement shall enure to the benefit of and be binding upon the parties hereto and their respective heirs, executors, administrators, successors and assigns. If Filta is required to pursue mediation, arbitration or litigation to enforce the terms of this Agreement, then You will reimburse Filta for all attorneys' fees and legal costs it incurs in doing so.

**IN WITNESS WHEREOF,** the parties have executed this Confidential Separation Agreement and General Release by their duly authorized representatives.


**PATRICK MICHAEL GARRY**                    **THE FILTA GROUP, INC.**


Patrick Michael Garry (May 12, 2022 19:38 CDT)        Tom Dunn (May 13, 2022 10:44 EDT)
By:    Patrick Michael Garry                    By:    Tom Dunn
Title:  Individual                        Title:  CEO


**MMG ENTERPRISES, LLC**


Patrick Michael Garry (May 12, 2022 19:38 CDT)
By:    Patrick Michael Garry
Title:  Owner

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| THE FILTA GROUP, Inc., a Delaware corporation | PATRICK MICHAEL GARRY, an individual, and MMG ENTERPRISE, LLC, an Oklahoma limited liability company |

**(b)** County of Residence of First Listed Plaintiff   Orange
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ava K. Doppelt, ALLEN, DYER, DOPPELT, + GILCHRIST
255 South Orange Ave, Suite 1401, Orlando, FL 32801
adoppelt@allendyer.com    (407) 841-2330

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| [ ] 140 Negotiable Instrument | Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Pharmaceutical | | **INTELLECTUAL** | [ ] 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | **PROPERTY RIGHTS** | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Product Liability | | [ ] 820 Copyrights | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted | Liability | [ ] 368 Asbestos Personal | | [ ] 830 Patent | [ ] 460 Deportation |
| Student Loans | [ ] 340 Marine | Injury Product | | [ ] 835 Patent - Abbreviated | [ ] 470 Racketeer Influenced and |
| (Excludes Veterans) | [ ] 345 Marine Product | Liability | | New Drug Application | Corrupt Organizations |
| [ ] 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | [x] 840 Trademark | [ ] 480 Consumer Credit |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards | [ ] 880 Defend Trade Secrets | (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | [ ] 371 Truth in Lending | Act | Act of 2016 | [ ] 485 Telephone Consumer |
| [ ] 190 Other Contract | Product Liability | [ ] 380 Other Personal | [ ] 720 Labor/Management | | Protection Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal | Property Damage | Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | Injury | [ ] 385 Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ |
| | [ ] 362 Personal Injury - | Product Liability | [ ] 751 Family and Medical | [ ] 862 Black Lung (923) | Exchange |
| | Medical Malpractice | | Leave Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | Income Security Act | | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate | | **FEDERAL TAX SUITS** | Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ | Sentence | | [ ] 870 Taxes (U.S. Plaintiff | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | Accommodations | [ ] 530 General | | or Defendant) | [ ] 899 Administrative Procedure |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party | Act/Review or Appeal of |
| | Employment | **Other:** | [ ] 462 Naturalization Application | 26 USC 7609 | Agency Decision |
| | [ ] 446 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | [ ] 950 Constitutionality of |
| | Other | [ ] 550 Civil Rights | Actions | | State Statutes |
| | [ ] 448 Education | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. § 1114

Brief description of cause:
Trademark Infringement Lanham Act and Other Claims

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
Unknown

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE
01/25/2024

SIGNATURE OF ATTORNEY OF RECORD
*Ava K. Doppelt*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | |
|---|---|
| THE FILTA GROUP, INC., a Delaware coporation, <br><br> *Plaintiff(s)* <br> v. <br> PATRICK MICHAEL GARRY, an individual, and MMG ENTERPRISE, LLC, an Oklahoma limited liability company, <br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  PATRICK MICHAEL GARRY
16117 MONTAGUE DRIVE
EDMOND, OK 73013

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Ava K. Doppelt
ALLEN, DYER, DOPPELT + GILCHRIST, P.A.
255 South Orange Avenue, Suite 1401
Orlando, FL 32801
(407) 841-2330
adoppelt@allendyer.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .


I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                        *Server's signature*


                                         _____
                                                        *Printed name and title*


                                         _____
                                                        *Server's address*


Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | |
|---|---|
| THE FILTA GROUP, INC., a<br>Delaware coporation,<br><br>_____<br>*Plaintiff(s)*<br>v.<br>PATRICK MICHAEL GARRY, an<br>individual, and MMG ENTERPRISE,<br>LLC, an Oklahoma limited liability<br>company,<br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  MMG ENTERPRISE, LLC
c/o Registered Agent, UNITED STATES CORPORATION AGENTS, INC.
3030 NORTHWEST EXPRESSWAY
SUITE 200, #126
OKLAHOMA CITY,OK 73112

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Ava K. Doppelt
ALLEN, DYER, DOPPELT + GILCHRIST, P.A.
255 South Orange Avenue, Suite 1401
Orlando, FL 32801
(407) 841-2330
adoppelt@allendyer.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                      *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: