IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THE FILTA GROUP, INC., a
Delaware corporation,

        Plaintiff,

vs.                        Case No. 6:24-cv-00171-WWB-RMN

PATRICK MICHAEL GARRY, an
individual, and MMG ENTERPRISE,
LLC, an Oklahoma limited liability company,

        Defendants.

_____/

## PLAINTIFF'S MOTION FOR FINAL DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST BOTH DEFENDANTS

Pursuant to Federal Rule of Civil Procedure ("FRCP") 55(b), Plaintiff The Filta Group, Inc. ("Plaintiff") hereby moves for final default judgment against Defendants MMG Enterprise, LLC ("MMG") and Patrick Michael Garry ("Garry") (collectively, "Defendants"), and states as follows.

## SUMMARY

After neither Defendant responded to the Complaint in this action after they were each timely served with the Summons and Complaint, the Clerk entered a default against both. Therefore, all the allegations of fact in the Complaint are deemed admitted for purposes of liability. These admitted facts are sufficient to find Defendants liable for breach of contract, trademark infringement, and false designation of origin and unfair competition. As a result, Plaintiff is entitled to a final default judgment against both Defendants in the amount of $311,726.80 and for a permanent injunction.

1

## PROCEDURAL HISTORY

Plaintiff filed the operative Complaint on January 25, 2024. Service was perfected on both Defendants, and neither responded within twenty-one days of service. *See* Renewed Mot. for Entry of Clerk's Default (Dkt. 13) and Mot. for Entry of Clerk's Default Against Def. MMG Enterprise, LLC (Dkt. 17). Subsequently, the Clerk was ordered to, and did, enter a default against Garry on April 9, 2024, *see* Entry of Default (against Garry) (Dkt. 15), and against MMG on June 6, 2024, *see* Entry of Default (against MMG) (Dkt. 19). As of the date of this filing, neither Defendant has responded to the Complaint, entered an appearance in this case, or filed any other document in this case.

## LEGAL STANDARDS

A party defaults when it fails to answer a complaint within twenty-one days of service. FRCP 12(a)(1)(A) and 55(a). As a consequence, the defaulting party admits all of the "'plaintiff's well-pleaded allegations of fact' for purposes of liability." *Wiand v. Clark Asset Mgmt. Co.*, No. 8:22-cv-1512-KKM-TGW, 2023 U.S. Dist. LEXIS 53433, at *3 (M.D. Fla. Mar. 27, 2023) (citing *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987)). Following entry of a clerk's default, a plaintiff is entitled to a default judgment so long as "the admitted facts are sufficient to establish liability[.]" FRCP 55(a) and (b)(2); *Sanrio Co. v. Sommer's Ent. LLC*, 2019 U.S. Dist. LEXIS 48141. At *4 (S.D. Fla. Mar. 20, 2019). In other words, a plaintiff must show that in the pleadings "there is sufficient basis" – defined in this Circuit as "akin to that necessary to survive a motion to dismiss for failure to state a claim" – before a default judgment can be entered. *Nygard v. Jasper*, No. 8:15-cv-1939-T-33EAJ, 2016 U.S. Dist. LEXIS 193520, at *4 (M.D. Fla. Jan. 4, 2016); *see also United States v. Leclaire*, No. 8:21-cv-1873-VMC-TGW, 2022 U.S. Dist. LEXIS 138436, at *4

(M.D. Fla. Aug. 3, 2022) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); also citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997)). Where the plaintiff establishes liability, the plaintiff simultaneously establishes its right to a default judgment.

Once the plaintiff establishes liability, "the court *must* ascertain the appropriate amount of damages and enter final judgment in that amount." *Mangel v. Daza*, No. 2:19-cv-525-FtM-38MRM, 2020 U.S. Dist. LEXIS 59059, at *4 (M.D. Fla. Apr. 3, 2020) (emphasis added) (citing *Nishimatsu*, 515 F.2d at 1206). An evidentiary hearing on damages is not required under FRCP 55(b) if all the essential evidence necessary is on record. *See Twows, LLC v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 8:23-cv-00139-WFJ-UAM, 2023 U.S. Dist. LEXIS 196645, at *11 (M.D. Fla. Nov. 2, 2023) (citing *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005)). A default judgment awarding damages may be entered without a hearing where the "amount of damages is a liquidated sum, an amount capable of mathematical calculation, or an amount demonstrated by detailed affidavits." *Wells Fargo Bank, N.A. v. Berfa Tires Corp.,* No. 6:20-cv-2218-WWB-GJK, 2022 U.S. Dist. LEXIS 32587, at *6 (M.D. Fla. Feb. 24, 2022) (citations omitted); *see also Lichtenstein v. Anuvia Plant Nutrients Corp.*, No. 8:23-cv-1423-CEH-AAS, 2023 U.S. Dist. LEXIS 202893, at *7-8 (M.D. Fla. Oct. 26, 2023) (citing *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543 (11th Cir. 1985) (finding that a court may grant default judgment and award damages without a hearing if "the amount claimed is a liquidated sum or one capable of mathematical calculation")); FRCP 55(b)(1); *Glob. Tech Led, Ltd. Liab. Co. v. HiLumz Int'l Corp.*, No. 2:15-cv-553-FtM-29CM, 2018 U.S. Dist. LEXIS 77842, at *9 (M.D. Fla. May 9,

2018). Similarly, where the defendants cannot dispute the evidence, a hearing is unnecessary. *See Twows, LLC*, 2023 U.S. Dist. LEXIS 196645, at \*10-11 (quotation marks and citation omitted).

## **RELEVANT FACTS**

Plaintiff is the owner of a proprietary system providing on-site services to restaurants, catering establishments, and institutional kitchens. Ex. A, Affidavit of Tom Dunn ("Dunn Aff.") at ¶ 2. Plaintiff has entered franchise agreements with companies across the U.S. and internationally to market and offer products and services under its various FILTA brands, for which Plaintiff owns several federal trademark registrations (the "FILTA Marks"). *Id*.

Garry, on behalf of MMG, executed a franchise agreement between Plaintiff and MMG ("Franchise Agreement") on April 4, 2016, whereby MMG was to be Plaintiff's exclusive franchisee for two geographic territories in Oklahoma City, Oklahoma (OK-02 and OK-03) ("Two Territories") for ten years. *Id*. at ¶ 3; Compl., Ex. A. Under the terms of the Franchise Agreement, Defendants agreed that except as expressly authorized in the Franchise Agreement, they would not make use of any of the intellectual property rights licensed under the Franchise Agreement or the goodwill of Plaintiff and its affiliates. Dunn Aff. at ¶ 3; Compl. ¶¶ 6.

In April of 2022, Garry told Filta that he wished to terminate the Franchise Agreement. Dunn Aff. at ¶ 4. Thereafter, on May 15, 2022, Filta, Garry, and MMG executed a Confidential Separation Agreement ("Separation Agreement") terminating the Franchise Agreement but leaving in place certain obligations of the Franchise Agreement. *Id*. at ¶¶ 5, 6; Compl., Ex. B. Defendants agreed to relinquish rights to the Two Territories

and abide by the Post-Termination Obligations contained in the Franchise Agreement, including but not limited to: returning certain equipment to Plaintiff; de-identifying vehicles and the business; ceasing to trade under the FILTA Marks; ceasing to use the FILTA Marks (or any imitation or approximation thereof) on vans, stationery, signs, uniforms, or otherwise; not holding themselves out as an operator of a Filta franchise or as having any connection with Filta or the franchise system; and complying with ongoing obligations related to Confidential Information, Restrictions on Competition (as defined in Section 23 of the Franchise Agreement), indemnification (as defined in Section 24 of the Franchise Agreement), and Disputes (as defined in Section 30 of the Franchise Agreement). Dunn Aff. at ¶ 6; Compl., Ex. B. In the Separation Agreement, Plaintiff agreed to waive the early termination penalties required by the Franchise Agreement. Dunn Aff. at ¶ 5; Compl., Ex. B.

Although the Defendants agreed in the Separation Agreement to cease conducting any business similar to the Filta franchise business, since May of 2022, Defendants have continued to operate the *same* business and offer the *same* services to the *same* customers as they did before entering the Separation Agreement, i.e., the very activities they promised to stop. *Id*. at ¶ 6. Defendants continued servicing their prior customers; did not tell their prior customers that Defendants were no longer associated with Plaintiff; operated a van in or around Oklahoma City, Oklahoma prominently displaying at least one of the FILTA Marks and Plaintiff's website www.gofilta.com; did not dismantle their waste oil collection facility; continued to collect and sell waste oil in or around Oklahoma City; and competed directly with Plaintiff in the Two Territories. *Id*.

## **ARGUMENT**

### A. Plaintiff is entitled to a default judgment because the allegations show Defendants are liable for all the causes of action in the Complaint.

Both Defendants were duly served under FRCP 4. Both Defendants failed to answer the Complaint within twenty-one days. The Court granted Plaintiff's motions for entry of a clerk's default, and the Clerk entered defaults against both Defendants. As of the date of this filing, neither Defendant has responded to the Complaint, entered an appearance in this case, or filed any other document in this case. Thus, Plaintiff has properly served Defendants, and Defendants defaulted. By defaulting, Defendants have admitted all allegations regarding liability as to all Counts in the Complaint. Thus, Plaintiff is entitled to a default judgment as to all Counts so long as the admitted facts in the Complaint "are sufficient to establish liability[.]" *See* FRCP 55(a) and (b)(2).

This Court has subject matter jurisdiction over the claims in this action pursuant to the Lanham Act, 15 U.S.C. § 1121, and pursuant to 28 U.S.C. §§ 1331, 1338, and 1367, and alternatively, pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy is in excess of $75,000, exclusive of interest and costs. Compl. ¶¶ 2-4 and 10. This Court has *in personam* jurisdiction over both Defendants because in the Franchise Agreement between them and Plaintiff they waived "all questions of personal jurisdiction and venue," and agreed that Plaintiff may file suit "in the federal or state court where [Plaintiff's] principal office is located at the time the suit is filed," in this case, Orlando. *Id.* at ¶¶ 7, 8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 by express consent and because Plaintiff is in this district and a substantial number of the events giving rise to Plaintiff's claims occurred in this

district. *Id*. at ¶ 11. Thus, an entry of final default judgment against both Defendants is proper.

    1.  <u>Garry and MMG are liable for breach of contract (Count I).</u>

       To prevail on a breach of contract claim, a plaintiff must establish "(1) a valid contract; (2) a material breach; and (3) damages." *Nat'l Staffing Sols., Inc. v. Armstrong*, No. 6:23-cv-1693-WWB-EJK, 2024 U.S. Dist. LEXIS 71442, at *12 (M.D. Fla. Jan. 25, 2024) (quoting *Abbott Labs, Inc., v. Gen. Elec. Cap*., 765 So. 2d 737, 740 (Fla. 5th DCA 2000)).

       Plaintiff pled the existence of a valid contract between it and Defendants, namely, the Separation Agreement. Compl. ¶¶ 5, 6, 20, 21, 22, 23, 30, 31, 51, and 53-57. To the extent Plaintiff's breach of contract claim relies on Defendants' breach of covenants not to compete,[1] *id*. at ¶ 53, Plaintiff must also show that the restrictive covenant is valid. *Nat'l Staffing Sols., Inc*., 2024 U.S. Dist. LEXIS 71442 at *12 (finding under Florida law a restrictive covenant of two years is reasonable). To be valid, the covenant must be "reasonable in time and area and set forth in writing signed by the person against whom enforcement is sought. Further, the person seeking enforcement of the restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant." *Id*. (cleaned up) (citing Fla. Stat. §§ 542.335(1)(a)-(b)). Here, Plaintiff alleged that the restrictive covenant was for two years following termination of the Franchise Agreement. Compl. ¶¶ 21, 27, 28, 55, 56. Plaintiff alleged the Separation Agreement and the Franchise Agreement were both signed by Garry on behalf of MMG, and were personally guaranteed by Garry. *See id*. ¶¶ 5, 6, 31

---

[1] Incorporated by reference into the Separation Agreement from the Franchise Agreement.

and Exs. A and B. And Plaintiff pled the existence of legitimate business interests. *Id*. at ¶¶ 57 and 63-65.

Plaintiff also pled the existence of several material breaches of the Separation Agreement by Defendants. For example, Plaintiff alleged that Defendants solicited both current and potential customers of Plaintiff's franchisees to provide services that are substantively equivalent to the Plaintiff's services in or around Oklahoma City, Oklahoma and elsewhere, including but not limited to within twenty-five miles of the Territory described in the parties' Franchise Agreement. *Id*. ¶¶ 37, 58. Plaintiff also alleged that Defendants violated the noncomplete restrictions of both Agreements.[2] *Id*. at ¶ 38, 60. Plaintiff also alleged that Defendants breached the Separation Agreement by failing to de-identify vehicles, *id*. at ¶ 39, dismantle their waste oil collection facility, *id*. at ¶ 40, and notify their customers that they were no longer a Filta franchise, *id*. at ¶ 41.

Lastly, Plaintiff pled damages resulting from the breach. *Id*. at ¶¶ 46, 48, 59-60, 64, 66, and 67.

Therefore, because Plaintiff adequately pled the elements for breach of contract in the Complaint, and because these facts are deemed admitted by virtue of Defendants' default, there is a sufficient basis to establish liability and enter default judgment for Count I for breach of contract. *See* FRCP 55(a) and (b)(2).

2. <u>Garry and MMG are liable for false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) (Count II).</u>

To prevail on a claim of false designation of origin under 15 U.S.C. § 1125(a), a

---

[2] Incorporated by reference into the Separation Agreement from the Franchise Agreement.

plaintiff must demonstrate "(1) that [he or she] had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it 'such that consumers were likely to confuse the two.'" *Sony Corp. v. Digital4Less, Inc.*, No. 6:12-cv-1893-Orl-28GJK, 2013 U.S. Dist. LEXIS 180717, at *11 (M.D. Fla. Dec. 3, 2013) (quoting *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 648-49 (11th Cir. 2007) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997))).

Plaintiff pled that it has enforceable trademark rights in the FILTA Marks, and that Defendants had no rights in the FILTA Marks. Compl. ¶¶ 5, 14, 15, 20, 21, 35, 36, 39, 73, and 74. Plaintiff pled that Defendants made unauthorized use of the FILTA Marks such that consumers are likely to confuse Plaintiff and Defendants. *Id.* at ¶¶ 5, 6, 39, 41, 45, 75, 76, and 78. Plaintiff pled that in fact, Defendants' unauthorized use of the FILTA Marks has caused actual confusion or mistake as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities. *Id.* at ¶ 77. Because Plaintiff adequately pled the elements for false designation of origin and unfair competition under the Lanham Act in the Complaint, and because these facts are deemed admitted once Defendants defaulted, there is a sufficient basis to establish liability and enter default judgment against Defendants for Count II for false designation of origin and unfair competition.

3.  Garry and MMG are liable for infringement of Filta's registered trademarks under the Lanham Act (Count III).

The Lanham Act prohibits the unauthorized "use in commerce [of] any . . . reproduction[, ]copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in

connection with which such use is likely to cause confusion, or to cause mistake, or to deceive" as to the source of the good or service. 15 U.S.C. § 1114(1)(a). To prevail on a claim of trademark infringement, Plaintiff must establish that (1) it possesses a valid mark; (2) Defendants used the mark in commerce in connection with the sale or advertising of goods [or services]; and (3) Defendants used the mark in a manner likely to confuse consumers. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008); *see also* 15 U.S.C. § 1114(1)(a).

Here, Plaintiff alleged that it possesses valid registered marks, the FILTA Marks, and that Defendants had no rights in those marks. Compl. ¶¶ 5, 14, 15, 20, 21, 35, 36, 39, 87-89, and 91-93. Plaintiff also alleged that Defendants used the FILTA Marks in commerce in connection with the sale or advertising of Defendants' services. *Id*. at ¶¶ 39, 41, 91. Lastly, Plaintiff alleged that Defendants used the FILTA Marks in a manner likely to confuse consumers. *Id*. at ¶¶ 5, 6, 39, 41, 45, 91, 93, and 96. Therefore, because Plaintiff adequately pled the necessary elements for infringement of Filta's registered trademarks under the Lanham Act, and because these facts are deemed admitted since Defendants defaulted, there is a sufficient basis to find Defendants liable for and to enter default judgment against Defendants for Count III for trademark infringement.

Thus, Plaintiff has established that Defendants are liable for all three Counts in the Complaint, and Plaintiff is therefore entitled to a final default judgment in its favor.

### B.  Plaintiff is entitled to monetary damages, including its attorneys' fees.

"Under the Lanham Act, damages for trademark infringement may include (1) the defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." *Grand Havana Inc. v. Alchemist Distilleries Inc*., No. 1:23-cv-21943-KMM, 2024

U.S. Dist. LEXIS 97611, at *8 (S.D. Fla. Jan. 12, 2024) (citing 15 U.S.C. § 1117(a)) (awarding plaintiff its "lost royalties" based on defendant's prior sales and the license agreement between the plaintiff and defendant).

1. Plaintiff is entitled to lost royalties.

"The use of lost royalties to determine the actual damages incurred by a victim of trademark misuse is well established." *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1519-20 (11th Cir. 1990) (collecting cases).

Under the Franchise Agreement, Defendants were obligated for ten years to pay various royalties to Filta ("Royalties"), including but not limited to: (1) franchise fees; (2) service fees; and (3) fees from waste oil sales. Defendants terminated the Franchise Agreement on May 15, 2022, but remained obligated to adhere to the post-termination obligations of the Franchise Agreement. Nevertheless, Defendants continued to operate their business as before, using Plaintiff's trademarks and offering the same services to the same customers, but without paying anything to Filta for the right to do so.

Under the Separation Agreement, Defendants relinquished their exclusive rights to operate a Filta franchise in the Two Territories, making the Two Territories available to be sold by Plaintiff to a new franchisee as of May 15, 2022. Since that time, Defendants have been infringing on Plaintiff's trademarks and continuing to operate as before, but without paying anything to Filta. Because of Defendants' misconduct, Plaintiff has been unable to re-sell the Two Territories to a new franchisee despite its diligent efforts to do so. Dunn Aff. at ¶ 7. Therefore, but for Defendants' conduct, Plaintiff would have realized, but instead has lost, royalties.

Lost franchise fee. Plaintiff charges new franchisees a one-time $69,950 "Opening Package" fee as well as a one-time $39,950 "Territory Fee" for each territory. Dunn Aff. at ¶ 8; *see* Compl., ¶ 6; *see also* Compl. and Ex. A, ¶ 4.1 (showing 2016 fees). Assuming Plaintiff would have been able to re-sell each one of the Two Territories to two different franchisees, Plaintiff lost $219,800 (two "Opening Package" fees plus two "Territory Fees"). Dunn Aff. at ¶ 8. Or Plaintiff might have been able to re-sell the Two Territories to *one* new franchisee, and if so, Plaintiff lost $149,850 in franchise fees (one "Opening Package" fee plus two "Territory Fees"). *Id*.

Lost Service Fees. In addition to the franchise fees above, under the terms of the Franchise Agreement, Plaintiff was entitled to receive from Defendants royalties, called a "Service Fee," of $565 per month per territory, or $1,130 per month (because Defendants had two territories). *See* Dunn Aff. at ¶ 9; Compl., Ex. A, p. 3. The Franchise Agreement also provided that the Service Fee would increase each year by the higher of 2.5% or the increase in the Consumer Price Index. Dunn Aff. at ¶ 9. The Service Fees Plaintiff received from MMG while MMG was a franchisee of Plaintiff provide a roadmap for Service Fees Plaintiff lost since May 15, 2022. *See Grand Havana*, 2024 U.S. Dist. LEXIS 97611 at *13.

The Franchise Agreement was executed on April 4, 2016 and terminated on May 15, 2022. Dunn Aff. at ¶¶ 3, 4; Compl. at ¶¶ 5, 6. At the time the Franchise Agreement was terminated, Defendants were paying a Service Fee of $1,247.32 (which reflected the yearly increases since 2016). Dunn Aff. at ¶ 9. Service fees increased 5% in 2023 and 3.2% in 2024. *Id*. Taking into account these increases, and assuming the Service Fees will go up only the minimum of 2.5% for 2025 and 2026, the Service Fees would have

increased to $1,309.69 for 2023, $1,351.60 for 2024, $1,385.39 for 2025, and $1,420.02 for 2026 (the Franchise Agreement would have naturally terminated in April of 2026). *Id*. Thus, Plaintiff lost $75,578.96 in service fees. *Id*.

Lost waste oil sales. Plaintiff was also entitled to receive royalties of ten percent of Defendants' sales of waste oil.[3] Dunn Aff., ¶ 10; *see also*, Compl. Ex. A (FILTABIO ADDENDUM TO THE FILTA ENVIRONMENTAL KITCHEN SOLUTIONS FRANCHISE AGREEMENT). In 2021, MMG had done $40,869.74 in WVO sales, or $3,405.81 per month. Dunn Aff., ¶ 10. Assuming no inflation and no change in the amount of WVO sales, MMG would have continued to generate $3,405.81 per month in WVO sales, for which it would have paid Plaintiff "royalties" of $340.58 per month. *Id*. Therefore, since May 15, 2022, Plaintiff has lost at least $16,347.84 in royalties on waste oil sales by MMG ($340.58 per month multiplied by 48 months (from May of 2022 through April of 2026, the natural end of the Franchise Agreement)). *Id*.

2.  Plaintiff is entitled to enhanced damages under the Lanham Act.

The Court may, in its discretion, reduce or enhance the resulting award up to three times the amount of profits or damages, whichever is greater, as justice shall require. 15 U.S.C. § 1117(a). "Such an award is discretionary, but it may not be punitive, and must be based on a showing of actual harm." *Babbit Electronics. Inc. v. Dynascan Corp*., 38 F.3d 1161, 1183 (11th Cir. 1994) (per curiam).

---

[3] Under the FILTA franchise business model, franchisees such as MMG collected waste vegetable oil ("WVO") from commercial kitchens and then sold that WVO to third parties. Dunn Aff. at ¶ 10. Plaintiff collected a royalty of ten percent on these franchisee's WVO sales to third parties. *Id*.

Here, Defendants have shown actual harm, as described above. Defendants willfully and fraudulently infringed Plaintiff's intellectual property rights, and Defendants' actions were done knowingly and in bad faith. Compl. ¶¶ 101, 102. Because Defendants defaulted, the allegation that their conduct was willful, Compl. ¶ 43, is deemed admitted. *See Trove Brands v. Jh Studios*, No. 8:19-cv-1809-KKM-AAS, 2021 U.S. Dist. LEXIS 255121, at *13 (M.D. Fla. July 21, 2021) (finding a default warrants an inference of willfulness). Moreover, Defendants had actual knowledge of Plaintiff's FILTA Marks because they entered into two contracts with Plaintiff (the Franchise Agreement and Separation Agreement) expressly identifying the parties' respective rights to those Marks. Despite this knowledge, Defendants willfully and intentionally continue to use the FILTA Marks and fraudulently hold themselves out as a Filta franchisee. *See id.* (finding a trademark infringement is "willful" when "the infringer acted with actual knowledge or reckless disregard for whether its conduct infringed" upon the plaintiff's intellectual property rights). Therefore, Plaintiff's damages are entitled to be trebled.

3.  Plaintiff is entitled to an award of its attorneys' fees and costs.

Plaintiff is entitled to an award of its attorneys' fees and costs under the Separation Agreement and under 15 U.S.C. § 1117(a).

The Separation Agreement provided for Defendants to reimburse Plaintiff for all of Plaintiff's attorneys' fees and costs incurred in pursuing litigation to enforce the Separation Agreement's terms. Compl. ¶ 6 and Ex. B, p. 3. Plaintiff has incurred attorneys' fees and costs to enforce the terms of the Separation Agreement. *Id.* at ¶¶ 50, 83; Dunn Aff. at ¶ 12.

Additionally, under 15 U.S.C. §1117(a), a prevailing party shall be entitled to recover "the costs of action," and may be awarded its reasonable attorneys' fees. Courts have consistently allowed the recovery of attorneys' fees under Section 1117(a) in "exceptional cases" where the conduct of those infringing on the intellectual property on the plaintiff is "malicious, fraudulent, deliberate, or willful." *See Coach Inc. v. Just a Boun, LLC,* No. 6:11-cv-797-Orl-18GJK, 2011 U.S. Dist. LEXIS 144582, *11 (M.D. Fla. Nov. 8, 2011); *PetMed Express, Inc. v. MedPets.com, Inc.,* 336 F. Supp. 2d 1213, 1222 (S.D. Fla. 2004); and *E.I. du Pont de Nemours & Co. v. Magic Touch Cleaning & Rest., Inc.,* No. 5:10-cv-381-Oc-34TEM, 2011 U.S. Dist. LEXIS 71696, *10 (M.D. Fla. Feb. 28, 2011). An exceptional case is "where the infringing party acts in a malicious, fraudulent, deliberate, or willful manner." *Burger King v. Pilgrim's Pride Corp*., 15 F.3d 166, 168 (11th Cir. 1994) (internal quotation marks omitted). A case may also be considered "exceptional" and merit an award of attorney's fees when the defendant disregards legal proceedings and does not appear. *Trove Brands,* 2021 U.S. Dist. LEXIS 255121, at *16.

Here, Defendants willfully and fraudulently infringed Plaintiff's intellectual property rights, and Defendants' actions were done knowingly and in bad faith. Compl. ¶¶ 43, 44, 101, and 102. Because Defendants defaulted, their willfulness and bad faith is deemed admitted. *Id*. at ¶¶ 43, 44; *see Trove Brands*, 2021 U.S. Dist. LEXIS 255121, at *16. Moreover, Defendants had knowledge of Plaintiff's FILTA Marks because they entered into two contracts (the Franchise Agreement and Separation Agreement) that expressly identified the parties' respective rights to those marks. Despite this knowledge, Defendants willfully and intentionally continued to use the FILTA Marks and fraudulently

hold themselves out as a Filta franchisee. Therefore, Plaintiff is entitled to recover its costs and attorneys' fees.

### C. Plaintiff is entitled to permanent injunctive relief because Defendants are continuing to infringe Plaintiff's trademarks.

In addition to damages, injunctive relief is available in default judgments. *See Creeled, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 8:22-cv-02456-WFJ-SPF, 2023 U.S. Dist. LEXIS 195747, at *10-11 (M.D. Fla. Nov. 1, 2023) (citing *PetMed Express, Inc.*, 336 F. Supp. 2d at 1222). A "[d]efendants' failure to respond or otherwise appear in [an] action makes it difficult for [a] [p]laintiff to prevent further infringement absent an injunction." *Id.* at *11 (citing *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003)). Injunctive relief is favored as "the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Creeled, Inc.*, 2023 U.S. Dist. LEXIS 195747, at *10 (M.D. Fla. Nov. 1, 2023) (citing *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988))). A permanent injunction is appropriate where a plaintiff demonstrates that "(1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest." *Creeled, Inc.*, 2023 U.S. Dist. LEXIS 195747, at *11 (M.D. Fla. Nov. 1, 2023) (citing *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)). A default satisfies the first two elements. *See 24-7 Bright Star Healthcare, LLC v. Brightstars Helping Hands LLC*, No. 6:22-cv-2087-RBD-RMN, 2023 U.S. Dist. LEXIS 127052, at *7 (M.D. Fla. July

16

24, 2023); *see also, Wyndham Vacation Ownership, Inc. v. Slattery*, No. 6:19-cv-1908-WWB-EJK, 2023 U.S. Dist. LEXIS 178681, at *16 (M.D. Fla. Oct. 4, 2023).

Here, the first and second elements of the standard are automatically established by virtue of Defendants' default, by which they admitted all the allegations in the Complaint. *See id.* (citing *Virgin Records Am., Inc. v. Courson*, No. 3:07-cv-195-VMC-MCR, 2007 U.S. Dist. LEXIS 75969, 2007 WL 3012372, *2 (M.D. Fla. Oct. 12, 2007) ("A default is per se satisfaction of the first element")); *see also 24-7 Bright Star Healthcare, LLC*, 2023 U.S. Dist. LEXIS 127052, at *7 (stating that "there is 'generally no adequate remedy at law' for trademark infringement cases.").

Regarding the balance of hardships, there is no harm to Defendants that could outweigh the severe, irreparable harm that is occurring and will continue to occur to Plaintiff without a permanent injunction. Defendants' conduct is harming Plaintiff's franchise as well as the businesses of Plaintiff's other franchisees. Plaintiff is not seeking to enjoin a legitimate competitive activity, but rather is seeking to put a stop to Defendants' deceptive business practices. Permanently enjoining Defendants from infringing on the FILTA Marks would cause no hardship to Defendants because their unauthorized uses of the FILTA Marks are illegal. Without an injunction, Plaintiff will continue to suffer a diversion of customers and sales, loss of the ability to control the quality and reputation of its FILTA Marks, goods, and services, and continued injury to the Filta brands. Defendants possess no legally cognizable rights or protectable interest in trading on Plaintiff's goodwill and continuing to misappropriate and misrepresent the FILTA Marks and Plaintiff's goods and services. As such, the balance of harm weighs in favor of Plaintiff, and supports the entry of a permanent injunction.

Finally, the issuance of a permanent injunction is in the public interest. "In a trademark infringement case, the public interest is served by preventing consumer confusion in the marketplace." *Ain Jeem, Inc. v. Individuals P'ships, & Unincorporated Ass'ns Identified Schedule "A"*, 2021 U.S. Dist. LEXIS 135286, *23-24 ((citing *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297,1304) (finding entry of an injunction regarding trademark infringement served the public interest by preventing consumer confusion in the marketplace)); *see also Creeled, Inc.*, 2023 U.S. Dist. LEXIS 195747, at *13 ("the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' counterfeit products."). As a provider of high-quality commercial kitchen services, Plaintiff has become well-known and has garnered an excellent reputation in the marketplace. Defendants' use of the FILTA Marks on goods and services that are not associated with or controlled by Plaintiff is deceiving the public every minute it is allowed to continue. Although there is a public interest in fostering competition, a public interest in fostering such competition can only be legitimate if the competition is engaged in through lawful means. As demonstrated above, Defendants are intentionally deceiving and creating confusion among the consuming public and are irreparably harming Plaintiff. Thus, in this case, the public interest is served by the issuance of a permanent injunction. A permanent injunction will protect Plaintiff's trademark interests, prevent consumer confusion as to the source of the goods, protect the public from being defrauded by the sale of inferior services, and encourage respect for the law. Because this factor, along with all the preceding factors that govern the issuance of permanent injunctions, favors Plaintiff, this Court should issue a permanent injunction enjoining Defendants from offering for sale, selling, advertising,

and marketing goods and services bearing marks that are the same as or confusingly similar to the FILTA Marks.

Plaintiff also respectfully requests that this Court prohibit Defendants from transferring assets out of Defendants' financial accounts and order that all such assets up to the amount of the judgment be transferred to Plaintiff. *See Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (concluding that the district court had authority to freeze assets that could have been used to satisfy equitable relief sought); *CFTC v. Fingerhut*, No. 1:20-cv-21887, 2021 U.S. Dist. LEXIS 2653, at *15-18 (S.D. Fla. Jan. 7, 2021) (granting injunction and asset freeze against defendants in digital asset fraud scheme); *Gucci Am. Inc. v. 2005qihui8*, No. 15-cv-61649, 2015 U.S. Dist. LEXIS 180268, at *15-17 (S.D. Fla. Aug. 12, 2015) (granting preliminary injunction ordering third-party PayPal to freeze defendants' assets and divert those assets to a holding account for the trust of the court). Such a prohibition would prevent Defendants from hiding funds to avoid fulfilling the judgment.

## **CONCLUSION**

Plaintiff respectfully requests that the Court enter a final default judgment in favor of Plaintiff and against each Defendant on each of Plaintiff's claims; award Plaintiff damages in the amount of at least $311,726.80; award Plaintiff attorneys' fees and costs; enter a permanent injunction (i) prohibiting Defendants from further acts of infringement and unfair competition; (ii) prohibiting Defendants from transferring assets out of their financial accounts; and (iii) ordering that all such assets up to the amount of the judgment be transferred to Plaintiff; and any other relief the Court finds just.

Respectfully submitted this July 11, 2024.

*/s/ Trevor F. Ward*
Ava K. Doppelt
Florida Bar No. 393738
adoppelt@allendyer.com
*Lead Counsel*
Trevor F. Ward
Florida Bar No. 1031171
tward@allendyer.com
Allen, Dyer, Doppelt & Gilchrist, P.A.
255 South Orange Avenue, Suite 1401
Orlando, Florida 32801
Telephone:    407-841-2330
Facsimile:    407-841-2343

**Attorneys for Plaintiff**

## **CERTIFICATE OF FILING**

I HEREBY CERTIFY that on July 11, 2024, I presented the forgoing to the Clerk of the Court for filing and uploading to the Case Management/Electronic Case Filing ("CM/ECF") system.

*/s/ Trevor F. Ward*

Trevor F. Ward
FL Bar No. 1031171
tward@allendyer.com
